Los Esposos Pantaleón González y Josefa Roig de González, demandantes y apelantes, *v.* United States Casualty Co., demandada y apelada.

Núm. 7783.—*Sometido:* Noviembre 8, 1939. *Resuelto:* Noviembre 27, 1939.

*F. Fernández Cuyar,* abogado de los apelantes; *R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Los demandantes obtuvieron una sentencia contra P. R. Dairy, Inc., por la cantidad de $2,500, en resarcimiento de los daños que sufrieron por la muerte de su hijo Marino González Roig acaecida en la carretera que de Río Piedras conduce a Carolina, el día 22 de enero de 1932, al chocar un automóvil con un autocamión propiedad de la citada compañía. Una vez firme la sentencia, solicitaron y obtuvieron los demandantes la correspondiente orden de ejecución, que fué devuelta sin cumplimentar por hallarse la compañía bajo administración judicial.

El autocamión que causó la muerte del hijo de los demandantes se hallaba asegurado por una póliza en vigor el día del accidente y expedida por la U. S. Casualty Co.

Para cobrar la referida sentencia a la U. S. Casualty Co., que en lo sucesivo llamaremos "la aseguradora", interpusieron los demandantes este pleito. Se opuso la aseguradora demandada a las pretensiones de los demandantes, alegando que la asegurada no había cumplido con las estipulaciones pertinentes de la póliza, a saber:

Apartado 3. La Compañía defenderá a nombre y a beneficio del asegurado, todas las reclamaciones o pleitos civiles por daños y por los cuales sea responsable legalmente el asegurado y pagará dentro de los límites de esta póliza, cualquier sentencia rendida contra dicho asegurado por tales daños, así como también las costas que la Corte imponga, intereses en su parte proporcional de cualquier sentencia, computados hasta la fecha del pago u ofrecimiento por parte de la Compañía y cualquier otro gasto incurrido con el consentimiento escrito de la Compañía, y proveerá además al asegurado con el reembolso por gastos ocasionados en proveer primera cura médica en caso de un accidente.

"  *       *       *       *       *       *       *

"Condición C. Al ocurrir un accidente cobijado por esta póliza, el asegurado dará inmediatamente aviso escrito a la Compañía con la mayor información posible. Si surgiere alguna reclamación como consecuencia de algún accidente el asegurado enviará inmediatamente

a la Compañía toda la información, el emplazamiento o cualquier otro proceso relacionado tan pronto como le haya sido entregado. El asegurado no asumirá ninguna responsabilidad ni hará ningún gasto que no sea para la atención quirúrgica inmediata en caso de accidente, ni transará ninguna reclamación con excepción de que sea por cuenta propia, ni intervendrá en negociaciones para el arreglo ni en procedimientos legales a menos que no sea requerido por la Compañía, y se compromete en ayudar por cuenta de la Compañía a obtener información y evidencia y a suministrar testigos, y cooperará con la Compañía (con excepción de forma pecuniaria) en todas las cuestiones que la Compañía crea necesario en cualquier investigación, defensa o apelación bajo esta póliza.

"Condición D. En caso de quiebra o insolvencia del Asegurado, la Compañía no será relevada del pago de cualquier indemnización cubierta en esta póliza, que tuviere que ser pagada por tal quiebra o insolvencia. Si, por tal quiebra o insolvencia, cualquier ejecución en contra del Asegurado fuera devuelta sin satisfacer en cualquier acción de algún lisiado o por cualquier persona que reclamare por o a beneficio del lesionado, entonces la acción podrá ser tramitada por el lesionado o por cualquier otra persona en contra de la Compañía dentro de las condiciones de esta póliza por la cantidad de la sentencia pero nunca excediendo de la suma asegurada por esta póliza.

"Condición H. Ninguna alteración en las condiciones, términos o límites de esta póliza será válida sin la firma de un oficial ejecutivo de la Compañía. Si la condición de esta póliza con respecto al tiempo o límite de tiempo para avisos estuviere en conflicto con la Ley del país que tenga jurisdicción en la materia, tal provisión estatutaria reemplazará la provisión o condición de esta póliza."

Después del correspondiente juicio, la corte inferior, por el mérito de las alegaciones y la prueba, desestimó la demanda contra la aseguradora, fundándose en que de acuerdo con la evidencia, la asegurada no había cumplido con su obligación de notificar a la aseguradora inmediatamente después de tener conocimiento del pleito, enviándole la citación y copia de la demanda, impidiendo así que la aseguradora, por medio de sus abogados, asumiese la defensa y tramitación del pleito.

Contra esta segunda sentencia, es decir, la que desestimó la demanda contra la aseguradora, los demandantes interpusieron este recurso de apelación.

■ Que la negligencia de la asegurada fué la causa próxima del accidente, es cuestión no controvertida en este recurso y aceptada por la apelada, quedando circunscrito el recurso a las siguientes cuestiones: ¿Cumplió la asegurada "*sustancialmente*", como alegan los demandantes (demanda, párrafo 7), con las condiciones del contrato de seguro, de tal forma que la aseguradora no puede repudiar su cumplimiento? ¿Probaron los demandantes que P. R. Dairy, Inc. estaba insolvente al devolverse sin cumplimentar la orden de ejecución?

La aseguradora acepta que la asegurada le notificó oportunamente el accidente y que envió a su empleado, Sr. Heriot, a practicar la correspondiente investigación (declaración de Simonpietri, exposición del caso, pág. 27).

Declaró el Sr. Noa, la persona que diligenció el emplazamiento entregando copia de la demanda y del emplazamiento al Lic. Luis Toro Cabañas en su carácter de Secretario de la P. R. Dairy, Inc., que dicho Sr. Toro Cabañas, en presencia del testigo, llamó por teléfono al Sr. Simonpietri, agente de la aseguradora, y le notificó haber recibido el emplazamiento y copia de la demanda, requiriéndole a la vez que mandase a buscar dichos documentos porque su mensajero no se hallaba en aquellos momentos en la oficina. Aseguró el Sr. Noa que él no pudo ver ni oír, naturalmente, a la persona que hablaba por teléfono con Toro Cabañas. Sólo oyó las palabras que pronunció este último. (Exposición del caso, pág. 20.) Se estipuló que el Lic. Fernández Cuyar, abogado de los demandantes y que a la sazón se hallaba en la oficina de Toro Cabañas al diligenciarse el emplazamiento y verificarse la alegada llamada telefónica, declararía lo mismo que el testigo Noa.

Tanto el Sr. Heriot como Simonpietri negaron haber recibido el mensaje de Toro Cabañas, asegurando que la primera noticia que tuvieron de la interposición del pleito contra la asegurada fué al recibir, el 5 de abril de 1933, la

carta de fecha 3 del mismo mes y suscrita por el Lic. Carlos J. Torres (*exhibit* 4 de los demandantes), que literalmente dice así:

"Por la póliza Núm. PRRA3001, Uds. tenían cubierto el autocamión marca Day-Elder, *chassis* Núm. 3130, motor Núm. 16-C-13982, propiedad de la Puerto Rico Dairy, Inc., contra accidentes.

"Esta corporación desde 22 de diciembre de 1932 está bajo sindicatura y al tomar posesión los señores síndicos de la propiedad y documentos de la misma se encuentran que contra ella se sigue una acción interpuesta por los esposos Pantaleón González y Josefa Roig de González por daños y perjuicios, civil 17581, ante la Corte de Distrito de San Juan, en la que entre otras cosas solicitan se les indemnice con el pago de $10,000 por el hecho de que esta guagua mató a un jovencito llamado Marino González Roig. Como en estos casos Uds. acostumbran utilizar los servicios de sus propios abogados, espero nos den las instrucciones que estimen pertinentes a no ser que Uds. crean que yo puedo continuar la tramitación del mismo por estar mejor relacionado e informado en cuanto a los particulares envueltos.

"Esperando sus avisos sobre el particular, quedo de Uds., atento amigo y s. s. . . . .''

En el *exhibit* 4 de los demandantes que acabamos de transcribir, el Lic. Carlos Torres no hace mención alguna de la conversación telefónica que alegaron los demandantes sostuvo Toro Cabañas con Simonpietri. No obstante haber declarado el Sr. Carlos J. Torres que estaba presente cuando fué emplazado Toro Cabañas y que oyó la conversación telefónica entre Toro y Simonpietri, y constarle que fué Simonpietri quien contestó por la aseguradora (exposición del caso, pág. 14), la carta de 22 de abril de 1933, suscrita también por el Lic. Carlos Torres y dirigida a la aseguradora (*exhibit* 6, demandantes), tiende a demostrar que él se enteró por Toro Cabañas de la llamada telefónica después de recibir de la aseguradora la carta de 20 de abril de 1933 (*exhibit* 5, demandantes), en la que ésta alegaba que la asegurada no había cumplido con la obligación de notificarle la inter-

posición del pleito y enviarle los documentos pertinentes. La carta del Sr. Torres (*exhibit* 6), dice:

"Me refiero a su comunicación de 20 de abril de 1933.

"Hablando con el compañero Toro Cabañas, con relación al contenido de ella, *me indica que inmediatamente de ocurrido el accidente dió aviso a Uds. y asimismo les notificó que se había presentado una demanda de daños y perjuicios contra la compañía.*

"Así las cosas, Uds. pueden tomar la determinación que gusten.

"Deseo llamarles la atención de que el caso es uno del cual la compañía con muy poca atención podría salir divinamente bien, ya que no hay responsabilidad de ninguna especie por parte de los empleados de la compañía, no habiendo sido siquiera el *truck* de la compañía el que matara el joven a que se refiere la demanda en solicitud de daños y perjuicios.

"Deseo indicarles además, para su propio gobierno, que la P. R. Dairy, Inc. está bajo sindicatura y que difícilmente podrán hacer efectiva una sentencia contra la corporación en este estado y asumiendo la actitud que asuman, probablementne se verán envueltos en otro pleito por el hecho de no intervenir en uno que sería muy fácil resolverlo satisfactoriamente."

Otra carta del 11 de marzo de 1935 (demandantes, *exhibit* 8) en la que el Lic. Carlos J. Torres notifica a la aseguradora haberse dictado sentencia contra la asegurada por $2,500, en su último párrafo dice:

"Como mis representados siguen en la creencia de que la cláusula en que Uds. se amparan para evadir la responsabilidad del pago de la sentencia en este caso es una de las que necesariamente tendrá que ser anulada por la corte el día que esta acción sea promovida, hemos querido tenerles al corriente de todas nuestras actuaciones para que luego no puedan alegar ignorancia de los hechos acaecidos."

La corte sentenciadora, apreciando la declaración de Noa en el sentido de que no pudo oír ni ver la persona que contestó a Toro Cabañas por teléfono, la del Lic. Carlos Torres, que no armoniza con su propia carta, y la prueba negativa de Simonpietri y Heriot asegurando no haber recibido ni tener conocimiento de tal comunicación telefónica, dió crédito a los testigos de la aseguradora demandada, y al resolver así el conflicto no podemos sostener que cometiera

manifiesto error ni que actuase movida por pasión, prejuicio o parcialidad. Por lo tanto tenemos que partir de la base, a los efectos de este pleito, que la demandada aseguradora no recibió aviso de la institución del mismo contra la asegurada hasta el 5 de abril de 1933 que llegó a su poder la carta fechada dos días antes (demandantes, *exhibit* 4).

En su brillante alegato, la ilustrada representación de los demandantes honradamente expone:

"Los demandantes franca y honestamente aceptan que la regla general es al efecto de que la asegurada no puede recobrar de la aseguradora si ha dejado de cumplir con las condiciones esenciales de la póliza, y asimismo que si la asegurada no puede recobrar por este motivo, tampoco podría la tercera persona perjudicada."

Ésa es en efecto la regla sostenida por la mayoría de las jurisdicciones de los Estados Unidos. En la monografía más recientemente publicada por *American Law Reports,* en 106 A.L.R. 516, 532, se asegura que ésa es la regla de la mayoría y se expone así:

"La doctrina de la mayoría al efecto de que *la persona perjudicada (the injured party),* en ausencia de colusión entre *asegurador* y *asegurado,* ocupa la misma posición legal que el *asegurado (stands in the shoes of the insured),* en lo que respecta a defensas basadas en incumplimiento de condiciones subsiguientes al accidente, excepto cuando el efecto de haber dejado de cumplirlas el *asegurado* puede evitarse por su cumplimiento por la propia *persona perjudicada (injured party),* está sostenida por casi todos los casos decididos en el período cubierto por esta anotación. Al igual que en los casos citados en la anterior anotación en apoyo de la doctrina de la mayoría, algunos de los casos más recientes la asumen al aplicar a las defensas interpuestas por el *asegurador* en la acción seguida por el perjudicado los mismos principios (*considerations*) que hubieran sido aplicables si la acción hubiera sido interpuesta por el asegurado. En algunos casos la aplicación de estos principios ha dado por resultado una decisión en contra de la *persona perjudicada*; en otros a una decisión en favor de ésta."

Véase también el caso de *Rondón* v. *Aetna Casualty & Surety Co.,* 46 D.P.R. 613, y especialmente la cita que se hace en la página 629 de la opinión del Juez señor Cardozo,

emitida en el caso de *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271.

Como se dijo en el caso de *Rondón* v. *Aetna Casualty & Surety Co.*, supra,

"Tratar de interpretar el contrato celebrado en este caso en el sentido de que la póliza a virtud de la regla tercera del reglamento de 1924 no sólo responde al lesionado directamente, si que puede prescindirse al exigir esa responsabilidad de si el asegurado cumplió o no con sus obligaciones para con el asegurador, sería bajo las circunstancias concurrentes, repetimos, claramente injusto para con el asegurador." (Pág. 631).

Arguye la representación de los demandantes que admitiendo a los efectos del argumento que la aseguradora no hubiera sido notificada del litigio hasta el 3 de abril de 1933, no obstante, tuvo una amplia oportunidad de defenderse, enmendando la contestación ya radicada si así lo deseaba, y continuando el caso hasta su final determinación.

Olvidan los demandantes que la situación legal de la aseguradora demandada al hacerse cargo del pleito después de radicada la contestación jurada (*exhibit* C de la demandada, exposición del caso, pág. 37), no era la misma que la que hubiera resultado iniciando ella los procedimientos. Las alegaciones principales de un pleito, o sea la demanda y la contestación, constituyen los cimientos sobre los cuales descansa la teoría de las partes y una vez radicadas estas alegaciones juradas, si bien son susceptibles de enmienda, difícil es variar con entero éxito la teoría de la causa de acción o defensa. Cuando la asegurada notificó a la aseguradora la existencia del pleito, ya la asegurada había radicado su contestación jurada a virtud de cierto convenio con los demandantes para que se dejase sin efecto la rebeldía que le había sido anotada. En caso de enmendar la aseguradora la contestación, como pretenden los demandantes que pudo haber hecho, las alegaciones contenidas en la contestación jurada original indudablemente hubieran sido admisibles para destruir cualquier materia nueva o de defensa que

pudiera haber interpuesto la aseguradora en representación de la asegurada, incompatible en forma alguna con las alegaciones o defensas alegadas en la contestación jurada original. 1 Jones on Evidence (4a. ed.), pág. 513, y especialmente la nota 18.

Tampoco ha tenido en este pleito la demandada aseguradora la misma oportunidad de defenderse que hubiera tenido de haber intervenido desde su iniciación en el pleito contra la asegurada, pues si bien en el pleito que nos ocupa se presentó toda la prueba relativa a la negligencia, en cambio el montante de los daños era ya cosa juzgada para la demandada aseguradora, pues este pleito no tiene por objeto recobrar los daños realmente sufridos por los demandantes sino el montante de una sentencia firme y ejecutoria. Véase la demanda de este caso, transcripción de autos página 1.

Por último, sostienen los demandantes que la aseguradora concurrió al primer juicio por su agente Sr. Heriot y suministró todos los datos, fotografías, declaraciones juradas, etc., relacionados con el accidente, y que esta actitud de la demandada aseguradora cooperando con la asegurada en aquel pleito constituye una renuncia (*waiver*) a las estipulaciones de la póliza.

Esta aseveración parte de una premisa falsa. Es verdad que el Sr. Heriot compareció en el pleito seguido contra la asegurada P. R. Dairy, Inc., pero fué obedeciendo a una citación de la corte expedida a instancias de la Porto Rico Dairy, Inc., en la que se le ordenaba compareciese a declarar como testigo llevando consigo los indicados documentos. Tal conducta por parte del Sr. Heriot en manera alguna puede constituir un *waiver* o renuncia de los derechos de la aseguradora estipulados en la póliza, sobre todo después de haber expresado ella claramente por escrito su repudiación del contrato de seguro debido al incumplimiento de sus términos por parte de la asegurada.

*Por las razones expuestas, procede, a nuestro juicio, confirmar en todas sus partes la sentencia apelada.*