LUIS COLÓN VEGA, como padre con patria potestad sobre su hijo menor, HERMINIO COLÓN, demandante y apelado, *v.* EL GOBIERNO DE LA CAPITAL DE PUERTO RICO y UNITED STATES CASUALTY Co., demandados y apelante el primero.

Núm. 8569.—*Sometido:* Marzo 17, 1943. *Resuelto:* Mayo 18, 1943.

*J. Valldejuli Rodríguez*, abogado del apelante; *E. Díaz Santana* y *E. Mieres Calimano*, abogados del apelado; *James R. Beverley*, *R. Castro Fernández y José López Baralt*, abogados de la United States Casualty Co.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El 20 de octubre de 1938, en la parada 36½ de Hato Rey, en la Carretera Central, un automóvil propiedad de El Gobierno de la Capital de Puerto Rico, que regresaba de Río Piedras hacia San Juan, guiado por un chófer empleado de dicho Gobierno, arrolló a Herminio Colón, niño de 12 años de edad, quien estaba junto a la acera del lado derecho de la carretera, ocasionándole la fractura del cráneo y otras lesiones de menos importancia.

La demanda original, dirigida solamente contra el Gobierno de la Capital, fué desestimada por la Corte de Distrito de San Juan porque, a su juicio, no aducía hechos constitutivos de causa de acción contra el Municipio demandado. Dicha sentencia fué revocada por esta Corte Suprema, y el caso devuelto a la corte inferior para ulteriores procedimientos no inconsistentes con la opinión emitida, la que aparece publicada en 57 D.P.R. 15. Radicó el demandante una

·demanda enmendada y el Municipio la contestó con una negación general y específica de los hechos esenciales, y alegando además que los hechos expuestos eran insuficientes para constituir causa de acción.

En agosto 2, 1940 el demandante, con el permiso de la corte y· la conformidad del Municipio, radicó una tercera demanda enmendada en la que se incluía como demandada a la compañía aseguradora del automóvil que causó las lesiones, y se alegaba: que el Gobierno de la Capital es dueño y explota con fines de negocio el acueducto que suministra agua a San Juan, Río Piedras, Cataño y Bayamón; que entre sus facultades y deberes se encuentra el de atender por sus empleados a la conservación y funcionamiento de dicho acueducto, usando como medio de locomoción para trasladar a dichas municipalidades a los empleados técnicos que utiliza para dichos trabajos de conservación del acueducto, automóviles de su propiedad manejados por personas empleadas y autorizadas por el Gobierno demandado; que el automóvil que arrolló al niño Colón, fué utilizado el día del accidente para llevar a Río Piedras a un empleado que fué a realizar trabajos de conservación del acueducto e iba guiado por un chófer del municipio autorizado para guiar vehículos de motor en la isla; que el accidente ocurrió cuando el automóvil regresaba de Río Piedras a San Juan, guiado por dicho chófer en funciones de su cargo; que la causa del accidente fué el descuido y negligencia del chófer al tratar de pasarle, a una velocidad mayor de cincuenta millas por hora, a otro automóvil que iba delante de él en la misma dirección de Río Piedras a San Juan, efectuando el cruce por la parte interior del automóvil delantero y la acera del lado derecho, sin reducir la velocidad, sin tocar el *claxon* y sin tomar precaución alguna; y que como consecuencia de esa negligencia el niño fué arrollado y arrastrado por más de treinta metros. Se reclamó una indemnización de $15,000, costas y honorarios de abogado.

Compareció la compañía aseguradora y contestó negando específicamente todos los hechos alegados en la demanda, y como defensas especiales alegó: (1) que los hechos expuestos son insuficientes para constituir causa de acción contra· la compañía aseguradora; y (2) que el Gobierno de la Capital, en violación de las condiciones del contrato de seguro no le ha enviado hasta la fecha de la contestación, noviembre 7, 1940, ni el emplazamiento ni las alegaciones radicadas en este caso, ni le notificó la radicación del pleito, ni tampoco le dió aviso de sus múltiples trámites e incidentes; y que sin el consentimiento o conocimiento de la demandada, el Gobierno de la Capital asumió la defensa del pleito, nombrando abogado para que lo representara. Alega la compañía aseguradora que el incumplimiento de las mencionadas condiciones la exonera de toda responsabilidad para con el gobierno asegurado o para con el lesionado, de acuerdo con las condiciones de la póliza.

El Gobierno de la Capital no contestó la demanda enmendada y tampoco compareció al juicio, nó obstante tener abogado designado y pagado para la defensa de los intereses de los contribuyentes y haber sido dicho abogado notificado de la fecha señalada para el juicio. La corte inferior dictó sentencia condenando 'al Gobierno demandado a pagar al demandante la suma de $6,000 más las costas; y declaró sin lugar la demanda en cuanto a la compañía aseguradora. No conforme el demandante con la exoneración de dicha compañía, entabló el presente recurso.

En junio 28 de 1941 el Lic. J. Valldejuli Rodríguez, abogado del Gobierno de la Capital, radicó una extensa moción en la que solicitó se dejara sin efecto la sentencia dictada contra el Municipio para que éste tuviera una oportunidad de asistir a la vista del caso en su fondo. Declarada sin lugar dicha moción, el Gobierno de la Capital entabló recurso de apelación para ante esta Corte Suprema.

La vista de ambos recursos tuvo lugar el 17 de marzo de 1943 con asistencia de los abogados del demandante y de la

compañía aseguradora. El abogado del Municipio no compareció. Sometió el caso por su alegato, en el que sostiene que la Corte de Distrito de San Juan erró al declarar sin lugar la moción para que se dejara sin efecto la sentencia; al no declarar que el menor lesionado fué culpable de negligencia contributoria; al dictar una sentencia que es "el acto volitivo del magistrado de la corte inferior informado de pasión, prejuicio y parcialidad contra las corporaciones, y en especial contra la Capital de Puerto Rico"; al dictar una sentencia excesiva e inadecuada; al exonerar a la compañía aseguradora; y al dictar una sentencia que no está sostenida por la prueba. Consideraremos dichos señalamientos en el mismo orden en que aparecen formulados.

1. Entre las varias razones aducidas por el Municipio en apoyo de la moción para que se dejara sin efecto la sentencia en rebeldía dictada en su contra, figuran las siguientes:

(*a*) que la moción para que se hiciera parte a la compañía aseguradora no fué señalada para vista y fué declarada con lugar sin oír a las partes; y que la tercera demanda enmendada fué radicada sin permiso legal.

En su resolución negándose a dejar sin efecto la sentencia, la corte inferior hizo constar que "en agosto 2 de 1940 solicitó el demandante de esta corte, con la conformidad del demandado, permiso para radicar una tercera demanda enmendada, de la que fué notificado el demandado en dicho día". Al pie de la tercera demanda enmendada, que consta en la transcripción de autos, aparece la notificación hecha al abogado del Municipio el día 2 de agosto de 1940. De los autos ante nos no aparece que con posterioridad a la notificación que se le hizo de la tercera demanda enmendada, el abogado del Municipio formulara objeción alguna a la forma y manera en que se había radicado y notificado dicha demanda. A falta de prueba en contrario debemos presumir que los procedimientos se ajustaron a la ley. [2] Además,

si el Municipio consintió que se radicara dicha demanda enmendada, está ahora impedido de formular objeciones que por no haber sido formuladas oportunamente deben considerarse como renunciadas. [3] Más aun, si algún error se hubiese cometido al permitir que la compañía aseguradora fuese incluída en la demanda como parte codemandada, ese error en nada podía perjudicar al Municipio demandado, pues éste debía tener más interés que nadie en que se incluyese en el pleito a la compañía que por medio de su póliza se había comprometido a pagar por el Municipio en caso de una sentencia adversa.

La contención del Municipio apelante de que después de haberse radicado la tercera demanda enmendada debió emplazarse de nuevo al Municipio, no merece seria consideración. Es elemental que el objeto del emplazamiento es someter a una parte demandada a la jurisdicción de la corte. El Gobierno de la Capital quedó sometido a la jurisdicción de la corte inferior por medio del emplazamiento original y continuará así sometido hasta que se dicte y ejecute una sentencia definitiva. El representante legal del Municipio demandado consintió la radicación y oportunamente fué notificado con copia de la demanda enmendada. Era su deber ineludible alegar en contra de dicha demanda dentro del término de diez días que la ley le concede para hacerlo y nada hizo. Optó por abandonar la defensa de los contribuyentes que le pagan para que defienda sus intereses, dejando primero de notificar a la compañía aseguradora de acuerdo con las condiciones de la póliza, permitiendo más luego que se anotara la rebeldía del Municipio sin hacer gestión alguna para abrirla, y no concurriendo como debió haberlo hecho al acto de la vista a defender a su cliente en contra de los intereses adversos del demandante que reclamaba una cuantiosa indemnización y de la compañía aseguradora que alegaba haber sido exonerada de toda responsabilidad por la violación por parte del Municipio de las condiciones de la póliza.

■ La tercera demanda enmendada sustituyó a la segunda a todos los efectos legales y habiendo sido radicada, con el permiso de la corte y el consentimiento del Municipio, al no contestarla éste era procedente que se dictara sentencia en rebeldía después de oír la prueba del demandante. *Quiñones* v. *Sucesión Riera,* 51 D.P.R. 760; 1 Bancroft's *Code Pleading,* pág. 810, sec. 561.

■ (*b*) Que ninguna de las alegaciones de la compañía aseguradora fué notificada al Gobierno de la Capital.

Bastaría decir, para resolver esta cuestión, que no sería justo hacer responsable al demandante del incumplimiento por parte de un demandado de la obligación—asumiendo que ésta exista—de notificar sus alegaciones a sus codemandados.

Además, habiendo sido notificada la tercera demanda enmendada al abogado del Gobierno de la Capital en agosto 2, 1940, el término para contestarla expiró el día 12 del mismo mes, desde cuya fecha estuvo el Municipio demandado en rebeldía por no haber radicado alegación alguna en contra de dicha demanda. Cuando la compañía aseguradora radicó su contestación en noviembre 7 de 1940, ya hacía cerca de tres meses que el Municipio estaba en rebeldía, sin que hubiese pendiente en esa fecha moción alguna para dejarla sin efecto. En esas condiciones fué el pleito a juicio, sin que compareciera el Municipio demandado, no obstante haber sido notificado su abogado con once días de antelación a la fecha en que comenzó a celebrarse la vista.

Consideradas todas las circunstancias que hemos apuntado y no siendo la negligencia del abogado, que es imputable al cliente, causa legal suficiente para anular una sentencia como la dictada en este caso, debemos resolver como resolvemos que la corte *a quo* no erró al declarar sin lugar la moción para dejarla sin efecto.

■ 2. La corte inferior, después de examinar y pesar la evidencia del demandante, no habiendo presentado ninguna los demandados en cuanto al accidente, llegó a las siguientes conclusiones:

(a) que el accidente se debió a la negligencia del chófer municipal, quien en ese momento conducía el automóvil a una velocidad de 45 millas por hora y estaba pasando por la derecha de otro automóvil que caminaba en la misma dirección, violando las disposiciones de la sección (e) del artículo 12 y de la sección (a) del artículo 13 de la Ley de Automóviles vigente (Ley núm. 75 de abril 13, 1916, pág. 144).

(b) que en la fecha del accidente el Gobierno de la Capital explotaba, con fines de negocio, el acueducto de San Juan, suministrando agua a Río Piedras, Cataño y Bayamón.

(c) que el día del accidente el automóvil estaba en funciones corporativas del Gobierno de la Capital y regresaba en ese momento de Guaynabo, a donde había ido a llevar a un empleado municipal por orden del Jefe del Departamento de Obras Públicas.

Ya hemos visto que el Gobierno de la Capital no interpuso defensa alguna en contra de la tercera demanda enmendada. La compañía aseguradora se limitó a negar específicamente los hechos alegados por el demandante, y como única defensa especial interpuso la referente al incumplimiento por parte del Municipio de las cláusulas y condiciones de la póliza. La cuestión sobre la tardíamente alegada negligencia contributoria del menor demandante no fué levantada ante la corte inferior y ésta no estaba obligada a hacer, como no hizo, pronunciamiento alguno en cuanto a ese extremo.

Hemos examinado cuidadosamente la evidencia y encontramos que es más que suficiente para sostener las conclusiones de la corte sentenciadora. No hallamos en toda la prueba circunstancia alguna que demuestre que el niño lesionado contribuyera en manera alguna con su falta de cuidado y precaución al daño por él sufrido. Las declaraciones de varios testigos presenciales demuestran que el niño antes de cruzar la carretera, frente al Auxilio Mutuo, miró

hacia Río Piedras y hacia Hato Rey para cerciorarse de si venían automóviles en una u otra dirección. El niño vió un automóvil que venía de Río Piedras hacia San Juan, conducido por el testigo Lorenzo Delgado, y juzgó correctamente que podía cruzar sin peligro. En efecto, logró cruzar sin que el carro de Delgado le hiciera daño alguno; y en el momento en que ponía el pie en la acera del Auxilio Mutuo, el carro del Municipio, que iba a una velocidad no permitida por la ley y que trataba de pasarle al carro de Delgado por su lado derecho, también en contra de la ley, le arrolló arrastrándole por una distancia de treinta metros.

No erró la corte inferior en sus conclusiones.

■ 3. No encontramos en todo el récord ante nos base o justificación alguna para la viciosa imputación que se hace al juez sentenciador Sr. La Costa, Jr., de haber inspirado su sentencia en la pasión, prejuicio y parcialidad contra las corporaciones y en especial contra el Gobierno de la Capital. Es censurable la práctica de hacer tales imputaciones cuando no se puede someter a la consideración de la corte ante la cual se acude en apelación ni el más leve indicio de que el juez sentenciador no actuó con la ecuanimidad, rectitud e imparcialidad con que deben actuar los que llevan sobre su conciencia la seria responsabilidad de administrar justicia. Es más censurable aun dicha práctica cuando el abogado recurre a ella como cortina de humo para cubrir su propia negligencia y el injustificado abandono de la defensa de los intereses representados por el Gobierno de la Capital, que ahora se verá obligado a pagar una sentencia que debiera hacer efectiva la compañía aseguradora.

■ 4. ¿Es excesiva la suma de $6,000 concedida al menor lesionado? Veamos la prueba.

Declaró el menor, que al ser arrollado por el automóvil perdió el conocimiento y no lo recobró hasta el día siguiente en la clínica, donde estuvo tres días, pasando después al Hospital Municipal de San Juan, en el que permaneció más

de un mes; que estaba en la escuela en cuarto grado; que desde que sufrió el accidente no puede estudiar porque se le empaña la vista y le da dolor de cabeza; que siente que el cuerpo se le duerme, le dan náuseas y el dolor de cabeza le aumenta; que antes no padecía de ataques y ahora sí; que ha sufrido tres, y que cuando le da el ataque la cabeza se le marea, vomita y pierde el conocimiento.

Declarando como perito médico, el Dr. Luis C. Boneta declaró: que el cuadro que presenta el menor es uno de presión intracreneal alta consecutiva, producida por la conmoción cerebral que sufriera debido a la contusión que produjo la fractura del cráneo; que ese cuadro, con esa sintomatología en forma de ataques epilépticos, es lo que se conoce como Epilepsia Jacksoniana o traumática; que esa lesión sufrida por el menor "lo incapacita permanente y totalmente para el trabajo y para muchas cosas en la vida."

El Dr. Luis de la Vega, médico con 26 años de práctica y Jefe de la Sección Médica· del Servicio Selectivo del Ejército Nacional, declaró, después de ser informado sobre la naturaleza de las lesiones e historia clínica del menor, que cuando se comprueba que la persona sufre de ataques epilépticos entonces se le clasifica con la letra "F", que significa "final and total rejection"—rechazo final y total—o sea completamente incapacitado para el servicio militar.

En el mismo sentido que el Dr. Boneta declararon los doctores Godines y Vadi, quienes clasificaron el caso como uno de epilepsia Jacksoniana o traumática.

Al fijar el montante de la indemnización, la corte sentenciadora se expresó así:

"Tomando en consideración las lesiones sufridas por Herminio Colón, su edad, las declaraciones no contradichas de los peritos médicos de' que el mismo está padeciendo de ataques epilépticos como consecuencia de los golpes recibidos, la naturaleza de dicha enfermedad, cuyo curso es muy variable, siendo su tratamiento muy largo y a menudo indefinido, durando tanto como la vida del paciente, el que se halla expuesto a quedar demente, y toda la· prueba aportada,

opinamos que la demandada Gobierno de la Capital debe pagar al referido Herminio Colón, por concepto de los daños y perjuicios sufridos, la suma de $6,000. (Véanse: *Reid v. New York & New Jersey Telephone Co.*, 135 N. Y. Supp. 846; *St. Louis, I. M. & S. Ry. Co. v. Tromlinson*, 94 S. W. 613.)''

Consideradas todas las circunstancias del caso y especialmente la edad del niño lesionado y el hecho de que por el resto de su vida será un epiléptico, nos inclinamos a creer que la suma de $6,000 es una compensación justa y razonable para el menor por el daño sufrido.

5. Se queja el Municipio apelante y también el demandante de la exoneración de la compañía aseguradora. Si la corte erró o si estuvo justificada al decretarla, es la última cuestión a resolver.

La póliza de seguro ofrecida en evidencia por el demandante contiene, entre otras, las siguientes estipulaciones y condiciones:

''II. Además de lo que antecede, la Compañía investigará todos los accidentes y reclamaciones cubiertos por esta Póliza, y a nombre y en representación del Asegurado defenderá todos los pleitos que se entablen a causa de dichos accidentes y reclamaciones aunque dichos pleitos fueran infundados, siempre que de los pleitos se le dieren los avisos que más adelante se exige; . . .

''SUJETO SIN EMBARGO A LAS CONDICIONES SIGUIENTES

''A. Deberá darse aviso inmediato por escrito a la Oficina Principal de la Compañía o a su Agente Autorizado de todo accidente, reclamación o pleito derivado de tal accidente, con todas las citaciones o emplazamientos, disponiéndose sin embargo, que la omisión del citado aviso inmediato no anulará ninguna reclamación hecha por el Asegurado siempre que se demuestre que fué razonablemente imposible suministrar tal aviso inmediatamente y que se dió tan pronto como razonablemente fué posible. Siempre que la Compañía lo solicite debe el Asegurado ayudar a conseguir información, prueba y la asistencia de testigos; y asimismo en todo tiempo dará a la Compañía toda la cooperación y auxilio que razonablemente sea posible.''

La corte inferior, después de analizar la prueba ofrecida por la compañía aseguradora para demostrar el incumplimiento por parte del Municipio asegurado de las condiciones de la póliza, llegó a las siguientes conclusiones, que a nuestro juicio están sostenidas por la evidencia.

"Si bien es cierto que a la aseguradora se le notificó el accidente, no es menos cierto que la primera noticia que la misma tuvo de la existencia de este litigio lo fué en julio del año 1940, cuando el abogado del demandante, Lic. José Soto Rivera, se lo informó, primero personalmente y luego por escrito, y que desde diciembre 13, 1938 en que se radicó la demanda hasta agosto 7 de 1940 en que fué emplazada la aseguradora por haber sido incluída como parte demandada, y aún a la fecha del juicio la codemandada Gobierno de la Capital de Puerto Rico no había avisado ni había notificado a la aseguradora en forma o manera alguna de la existencia de esta acción, no obstante haber tenido dicha codemandada Gobierno de la Capital conocimiento de la existencia de la misma desde diciembre 29 del año 1938, fecha en que fué emplazada, desde cuya fecha ha comparecido a defenderse representada por su abogado, no solamente en esta Corte si que también en la Corte Suprema de Puerto Rico."

El incumplimiento por parte del Gobierno de la Capital de las condiciones de la póliza quedó claramente establecido. Dos años y un mes transcurrieron desde la radicación de la primera demanda hasta la fecha del juicio, sin que el Gobierno de la Capital hiciera el menor esfuerzo para entregar a la compañía aseguradora el emplazamiento y la demanda o para demostrar que le había sido "razonablemente imposible" cumplir con la obligación contraída. Es doctrina firmemente establecida la de que la obligación de dar aviso a la compañía aseguradora de la ocurrencia de un accidente y de entregarle el emplazamiento y la demanda iniciada contra el asegurado, es parte esencial del contrato de seguro; que su cumplimiento es condición precedente al derecho del asegurado a exigir responsabilidad al asegurador; y que la violación de dicha condición anula la póliza. Véanse: Nota en 76 A.L.R. 23 *et seq.; Quiñones* v. *"L'Unión"*, 34 D.P.R. 405; 106 A.L.R. 516, 532.

En *Buxó* v. *The Aetna Casualty & Surety Co.*, 48 D.P.R. 187, en el que los hechos eran casi idénticos a los del presente caso, Buxó, dueño de una guagua asegurada, fué demandado por García y condenado a pagar a éste una indemnización de $2,000. Buxó hizo efectiva la sentencia y demandó a la compañía aseguradora. Ésta interpuso como defensa el incumplimiento por el asegurado de las condiciones de la póliza, idénticas a las del presente caso. Se probó que el asegurado no entregó la demanda a la compañía sino hasta después de 24 días de haber sido emplazado. Exoneramos a la compañía, diciendo:

"Analizada la prueba, no demuestra a nuestro juicio que el demandante cumpliera debidamente con lo estipulado en la póliza a los efectos de colocar en tiempo oportuno a la compañía en las mejores condiciones para encargarse de la defensa del pleito sobre daños y perjuicios."

Y en *González* v. *U. S. Casualty Co.*, 55 D.P.R. 668, que presentaba circunstancias análogas a las del caso de autos, exoneramos a la compañía aseguradora por haber sido ésta notificada del litigio después que el asegurado había radicado una contestación jurada.

La defensa de incumplimiento de las citadas condiciones por el asegurado puede ser interpuesta por la compañía aseguradora no solamente contra el asegurado si que también contra el reclamante de una indemnización por perjuicios sufridos por un accidente cubierto por la póliza. El perjudicado ocupa la misma posición legal del asegurado, salvo en el caso de colusión entre éste y el asegurador. Véase la monografía en 106 A.L.R. 516 a 532, y *González* v. *U. S. Casualty Co.*, supra. El reclamante de daños y perjuicios puede protegerse contra esa defensa notificando a la compañía aseguradora de la ocurrencia del accidente, haciéndola parte demandada al iniciar su acción y emplazándola y entregándole copia de la demanda. Nada de eso hizo el demandante en el presente caso y por consiguiente la compañía

aseguradora podía interponer contra él la mencionada defensa.

Nuestra decisión en *Rondón* v. *The Aetna Casualty & Surety Co.*, 56 D.P.R. 439, invocada por el apelante, no es de aplicación a los hechos del presente caso. En el de *Rondón* se trataba del seguro compulsorio de una guagua dedicada al negocio de transportar pasajeros, autorizada para ello por la Comisión de Servicio Público; y resolvimos que la doctrina seguida en el caso de *González* v. *U. S. Casualty Co.*, supra, es aplicable solamente a casos en que la póliza ha sido tomada voluntariamente y no a aquéllos en que el seguro es compulsorio por disposición estatutaria.

En el presente caso no se ha llamado nuestra atención hacia ninguna ley insular u ordenanza municipal por virtud de la cual el Gobierno de la Capital esté obligado a tener asegurados los automóviles que utiliza para los servicios municipales.

No erró la corte inferior al exonerar de toda responsabilidad a la United States Casualty Company.

*Por las razones expuestas, se confirma la sentencia recurrida.*

EN MOCION DE RECONSIDERACION
Julio 14, 1943.

1. ABOGADO Y CLIENTE—ANTICIPO A CUENTA DE HONORARIOS Y AUTORIDAD—COMPARECENCIA PERSONAL DEL LITIGANTE O POR ABOGADO—ABOGADO DE RÉCORD.— A menos que otra cosa en contrario aparezca de los autos, es abogado de récord y será considerado como tal, el que comparece en el pleito suscribiendo las alegaciones.

2. ID.—DE LA PROFESIÓN DE ABOGADO—PRIVILEGIOS, INCAPACIDADES Y RESPONSABILIDADES—REGULACIÓN DE LA CONDUCTA PROFESIONAL DE LOS ABOGADOS.— Este tribunal está en el deber ineludible de velar por que los abogados, que actúan como funcionarios de las cortes, cumplan estrictamente sus obligaciones profesionales. Un comentario nuestro a sus actuaciones en un caso no se eliminará de tener justificación en los autos.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El Licenciado Juan Valldejuli Rodríguez, abogado del Gobierno de la Capital de Puerto Rico, ha radicado ante esta

corte una moción solicitando la eliminación de ciertas manifestaciones que hiciéramos en la opinión emitida por este tribunal en el caso de epígrafe.

▌ Se solicita la eliminación del párrafo que lee así:

"El representante legal del municipio demandado consintió la radicación y oportunamente fué notificado con copia de la demanda enmendada. *Era su deber ineludible alegar en contra de dicha demanda dentro del término de diez días que la ley le concede para hacerlo y nada hizo. Optó por abandonar la defensa de los contribuyentes que le pagan para que defienda sus intereses, dejando primero de notificar a la compañía aseguradora de acuerdo con las condiciones de la póliza, permitiendo más luego que se anotara la rebeldía del Municipio sin hacer gestión alguna para abrirla, y no concurriendo como debió haberlo hecho al acto de la vista a defender a su cliente en contra de los intereses adversos del demandante que reclamaba una cuantiosa indemnización y de la compañía aseguradora que alegaba haber sido exonerada de toda responsabilidad por la violación por parte del Municipio de las condiciones de la póliza.*"

Las razones que se aducen en apoyo de la solicitud son, en síntesis, las siguientes:

(*a*) que el abogado compareciente no fué el que tuvo a su cargo la tramitación del pleito cuando se incluyó a la compañía aseguradora como demandada; y que el Gobierno de la Capital confió su defensa a la compañía aseguradora, de acuerdo con la póliza.

(*b*) que no existe constancia alguna en los autos de que el abogado compareciente fuera el que tuviera a su cargo el mencionado pleito en el momento en que se incluyó a la compañía de seguros como demandada.

(*c*) que el abogado compareciente no tenía noticias ni conocimiento que el automóvil que causó el accidente estuviese asegurado; y que el deber de notificar a la compañía no reposaba en él como un deber profesional.

(*d*) que el citado abogado no sabía que hubiese intereses encontrados entre la compañía y el Municipio, por no haber sido ni éste ni su abogado notificados de esa circunstancia;

y que el abogado no podía proceder a contestar una tercera demanda enmendada en un pleito que no se le había confiado.

(e) que del récord no aparece que se hubiere registrado rebeldía alguna contra el Municipio.

No procede, y se declara, por tanto, sin lugar la eliminación del párrafo arriba transcrito, por las siguientes razones:

Desde el momento en que se notificó al Gobierno de la Capital la demanda original de Herminio Colón, hasta el 6 de junio de 1940 en que por decisión de esta Corte se devolvió el caso a la de distrito, para ulteriores procedimientos, la defensa del Gobierno de la Capital estuvo a cargo del Licenciado Juan Valldejuli Rodríguez. Véase: 57 D.P.R. 15.

De los autos radicados ante esta corte aparece que en agosto 1°. de 1940 el demandante, con el permiso de la corte y sin objeción por parte del demandado, radicó una tercera demanda enmendada, haciendo parte demandada a la compañía aseguradora. Copia de esa demanda fué notificada al Sr. Valldejuli, quien firmó la notificación; que en 28 de septiembre de 1940, el Licenciado José López Baralt, abogado de la compañía aseguradora, radicó a nombre del Gobierno de la Capital y de la compañía una excepción previa a la tercera demanda enmendada; que el día 30 del mismo mes, el abogado López Baralt radicó una moción retirando la referida excepción previa en cuanto al Gobierno de la Capital, porque la misma había sido radicada "por error del abogado suscribiente, sin que el Gobierno de la Capital de Puerto Rico hubiera autorizado al suscribiente a radicar tal excepción previa, y asímismo, sin que la U. S. Casualty Company lo hubiera autorizado o instruído para que radicara tal excepción previa a nombre del Gobierno de la Capital de Puerto Rico", y haciendo constar expresamente "que el Gobierno de la Capital de Puerto Rico se encuentra representado en estos autos por su abogado, el Lcdo. Juan Valldejuli Rodríguez"; que la moción a que acabamos de referirnos fué notificada con copia al Sr. Valldejuli, quien recibió y aceptó la copia, firmando como abogado del Gobierno de la Capital; que la moción fué decla-

rada con lugar el 4 de noviembre de 1940 y el 7 del mismo mes la compañía contestó la demanda, interponiendo, entre otras, la defensa de violación e incumplimiento por parte del Municipio asegurado de las condiciones de la póliza.

A partir de la fecha en que se le notificó la moción para retirar la excepción previa radicada por la compañía, que era aviso suficiente de que la compañía no pensaba asumir la defensa del Municipio, los autos no demuestran que el abogado de récord del Municipio hiciera gestión alguna para defender los intereses que le habían sido encomendados.

Es cierto que del récord no consta que se hiciera una anotación de la rebeldía del Municipio por no haber formulado alegación alguna contra la tercera demanda enmendada. Empero, el hecho esencial es que no obstante el conflicto de intereses existente entre la compañía y el Gobierno de la Capital, el abogado de éste no contestó la demanda, no compareció al juicio, a pesar de haber sido citado, y dejó huérfano de representación a su cliente.

La alegación del abogado promovente de que la defensa del Municipio había sido asumida por y encomendada a la compañía aseguradora está desvirtuada por los hechos que hemos expuesto.

El Licenciado Valldejuli aparecía en los autos como abogado de récord hasta la fecha en que la compañía aseguradora le notificó la moción retirando la excepción previa. De acuerdo con la Regla 27 de las de las cortes de distrito y las de este tribunal, el abogado de récord es aquél que ha comparecido en el pleito suscribiendo las alegaciones; y dicho abogado será considerado como tal, a menos que otra cosa en contrario aparezca de los autos. Véanse: *Garriga* v. *Medina,* 42 D.P.R. 775 y *Claudio* v. *Palacios y Muñiz*, 29 D.P.R. 825.

La alegación del abogado promovente de que al hacerse cargo del caso como defensor del Municipio él no sabía que los automóviles del mismo estuviesen asegurados, no es muy convincente. Aceptando que el abogado del Municipio ignorase el hecho de que los automóviles municipales estuvieran

asegurados, es una precaución elemental que debe tomar todo abogado defensor de un pleito por daños causados por un automóvil, la de cerciorarse si su cliente, el dueño del vehículo, está cubierto por una póliza de seguro. Y si lo estuviere, en ese caso es deber profesional del abogado estudiar la póliza y dar los pasos requeridos por las estipulaciones del contrato de seguro para que el asegurado tenga todo el beneficio de la póliza. Nada de eso hizo el abogado defensor del Municipio en el caso de autos.

Tampoco procede la eliminación del párrafo de nuestra opinión en que censuramos la práctica de imputar al juez de la corte inferior pasión, prejuicio y parcialidad, sin tener el más leve fundamento para justificar tan seria imputación. En el caso de autos se hizo esa imputación al Juez La Costa, Jr., no solamente en cuanto al caso de autos, si que también en cuanto a las corporaciones en general y especialmente en contra del Gobierno de la Capital. No consta nada en el récord que pueda justificar tales imputaciones. Por ese motivo, calificamos como viciosa y censurable la práctica de hacer tales imputaciones cuando no hay ni siquiera argumentos o razones para sostenerlas.

Es deber ineludible de esta Corte Suprema velar por el estricto cumplimiento de sus obligaciones profesionales por parte de los abogados, quienes actúan como funcionarios de las cortes. Al comentar o criticar actuaciones de los abogados, que constan en los autos, no nos mueve propósito alguno de molestar, ofender o perjudicar en manera alguna al abogado que por una u otra razón no cumplió estrictamente las obligaciones para con su cliente. Todos los abogados tienen y son acreedores a nuestro respeto y consideración, pero faltaríamos a nuestro deber si dejáramos pasar sin el merecido comentario situaciones como la que presenta el récord de este caso.

*La moción debe ser declarada sin lugar.*

El Juez Presidente Sr. Del Toro no intervino.