JESÚS HERNÁNDEZ NIEVES, demandante y apelante, *v.* JUAN ROSARIO, GREGORIO CRUZ RIVERA y UNITED STATES CASUALTY CO. OF NEW YORK, demandados y apelados.

Núm. 9257.—*Sometido:* Mayo 7, 1946. *Resuelto:* Junio 14, 1946.

*José López Baralt* y *R. Rodríguez Lebrón*, abogados de la United States Casualty Co., quien presentó la moción de reconsideración; *José C. Jusino*, abogado del demandante en el pleito principal: *Enrique Segarra, Jr.*, abogado de la Hartford Accident & Indemnity Co., como *amicus curiae*.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

EN RECONSIDERACION

El presente es un pleito de daños y perjuicios por lesiones recibidas por la esposa del demandante en 1941 mientras viajaba como pasajera en un automóvil público, P. A. 85, al cual cubría una póliza de seguro expedida de acuerdo con la Ley núm. 33, Leyes de Puerto Rico, 1941 ((1) pág. 549). La póliza provee que no cubrirá ningún accidente que ocurra mientras el automóvil sea conducido por otra persona que no sea su dueño. No se niega que cuando ocurrió este accidente el automóvil era conducido por una persona que no era su dueño. La corte de distrito declaró con lugar la moción de la compañía de seguros aquí demandada para que se dictara una sentencia sumaria, y el demandante apeló.

El demandante sostiene que la Ley núm. 33 provee el seguro compulsorio de un automóvil "P.A." y que la Ley núm. 33 también provee que tal seguro cubrirá el automóvil, ya fuere éste conducido por su dueño o no. El demandante por tanto sostiene que bajo el caso de *Rondón* v. *Aetna Casu-*

*alty & Surety Co.*, 56 D.P.R. 439, la póliza aquí envuelta, expedida de acuerdo con la Ley núm. 33, cubre un accidente que ocurra mientras una persona que no sea el dueño esté manejando, a pesar de la disposición de la póliza que excluye tal accidente de su alcance.

La sección 1 de la Ley núm. 33, enmendando la Ley núm. 75, Leyes de Puerto Rico, 1916 (pág. 144), según enmendada, establece un arancel de derechos de licencia para automóviles y chóferes; *"Disponiéndose, sin embargo,* que el automóvil que su dueño destina a porteador público, si lo maneja él mismo y no posee, domina o controla otros vehículos de motor destinados a la transportación de pasajeros por paga, se considerará que es su instrumento de trabajo y, como tal, no pagará licencia alguna ni su dueño pagará derecho alguno por el uso y manejo de tal automóvil." Este disponiéndose sólo es aplicable a automóviles de una capacidad de ocho pasajeros o menos. Y "Toda persona que posea o explote como porteador público más de un automóvil de su pertenencia . . . o trate de obtener los beneficios de esta ley . . . incurrirá en delito menos grave . . . y convictas que fueren se les castigará con multa . . . o cárcel . . . ".

La sección 1 provee luego lo siguiente: "El dueño de un automóvil que actúa de porteador público y reciba el beneficio de exención del pago de licencia por considerarse *dicho automóvil* como instrumento de trabajo, pagará la suma de veintinueve (29) dólares por año. . . . Dicha suma de $29 ingresará en un fondo especial en la Tesorería de Puerto Rico y será utilizado por el Tesorero de Puerto Rico para pagar la prima de una póliza de seguro que cubra los accidentes causados por *dicho vehículo* a los pasajeros que viajan en el mismo y a terceras personas, y a tal fin el Tesorero de Puerto Rico satisfará dicha suma de $29 al asegurador que, en subasta pública convocada al efecto por la Comisión de Suministros del Gobierno Insular, ofrezca las mejores condiciones y reciba la buena pro en dicha subasta,

conforme a las reglas que a tales efectos fijare la citada Comisión de Suministros. En caso de que no concurriere a la subasta ningún asegurador o no se adjudicare la buena pro a ninguno de los que concurran por no considerarse aceptables las condiciones ofrecidas, la suma pagada por los dueños de automóviles públicos con destino a esta póliza de seguro se reservará en la Tesorería Insular en un fondo especial, hasta tanto se consiga un asegurador dispuesto a establecer el seguro interesado o se establezca un Fondo de Seguro del Estado para cubrir estos accidentes, o se determine otra cosa por la Asamblea Legislativa de Puerto Rico.

"*        *        *        *        *        *        *.

"No podrá transitar por las carreteras de Puerto Rico ningún porteador público que haya obtenido los beneficios de la exención aquí establecida que no haya pagado dicha suma para la mencionada póliza de seguro. El Tesorero de Puerto Rico expedirá un certificado de tal pago que se fijará en una parte visible del automóvil." (Bastardillas nuestras.)

Existen ciertas diferencias entre la Ley núm. 33 y un estatuto típico de seguro compulsorio.(¹) *Primera*—de conformidad con el último el dueño del automóvil no tiene opción; debe proveerse de una póliza de seguro. Pero bajo la Ley núm. 33 un dueño puede o no optar por ingresar en el fondo de seguro la suma de veintinueve dólares. En vez de pagar los veintinueve dólares, puede pagar el derecho de licencia corriente y funcionar como un porteador público sin seguro.

*Segunda*—en una póliza compulsoria la responsabilidad de la compañía es por una suma específica. Aquí, aun si el dueño elige pagar los veintinueve dólares, no se provee una

(¹)Véanse Anotaciones, 95 A.L.R. 1224; 85 A.L.R. 20; 106 A.L.R. 516; *Rondón* v. *Aetna Casualty & Surety Co.*, supra; *Leonardo* v. *De Vellis*, 198 N.E. 264 (Mass.. 1935); *Guzenfield* v. *Liberty Mut. Ins. Co.*, 190 N.E. 23 (Mass., 1934); *Grasso* v. *Cannon Ball Motor Freight Lines*, 81 S.W. 2d 482 (Tex., 1935); *Kruger* v. *California Highway Indemnity Exchange*, 258 P. 602 (Calif., 1927).

responsabilidad específica; el único seguro que contempla la Ley núm. 33 es aquél que el Tesorero pueda comprar con el fondo.

*Tercera*—los estatutos de seguro compulsorio hacen de la expedición de la póliza una condición precedente a la explotación del vehículo en las vías públicas. De acuerdo con la Ley núm. 33 el dueño no está impedido de transitar por las vías públicas hasta que asegura su automóvil. Para cumplir con el estatuto sólo tiene que ingresar veintinueve dólares en el fondo. Entonces recibe una licencia "P.A." y no tiene nada más que ver con el asunto. De ahí en adelante, el que se obtenga o no el seguro depende del esfuerzo de los funcionarios del Gobierno.

*Cuarta*—el seguro bajo un estatuto típico compulsorio debe cubrir al automóvil, independientemente de quién sea el chófer, siempre y cuando que éste sea un agente autorizado a guiarlo. Aquí, como hemos visto, la cuestión a determinarse es si la Ley núm. 33 permite que se limite la póliza a accidentes que ocurren mientras el dueño sea el que guíe.

*Quinta*—un estatuto de seguro compulsorio es aprobado primordialmente, si no exclusivamente, para beneficio de los pasajeros y viandantes. Pero, como veremos, la Ley núm. 33 fué ideada primordialmente para beneficio de aquellos miembros de la clase de los chóferes que poseen un solo automóvil y lo manejan ellos mismos para su subsistencia.

Las pólizas expedidas bajo estatutos de seguro compulsorio frecuentemente contienen condiciones relevando a la aseguradora de responsabilidad si el chófer de un automóvil maneja sin estar autorizado para ello o si el asegurado deja de notificar a la aseguradora del accidente o infringe otras condiciones posteriores al accidente, las que se relacionan en la póliza. La regla es que bajo una póliza compulsoria la infracción de tales condiciones no puede perjudicar los derechos de un tercero lesionado bajo la póliza. Anotación, 76 A.L.R. 23, 231–35; *Rondón* v. *Aetna Casualty & Surety Co.,*

supra, y casos allí citados; *Ott* v. *American Fidelity & Casualty Co.*, 159 S. E. 635 (S. C., 1931). Las diferencias entre la Ley núm. 33 y el estatuto corriente de seguro compulsorio pueden o no requerir una regla diferente de surgir un caso bajo la Ley núm. 33 en que una de tales condiciones de la póliza fuera infringida. Pero esa cuestión no está ante nos para ser decidida en este caso. De la misma manera, no tenemos que decidir si una póliza expedida bajo la Ley núm. 33 sería interpretada como póliza compulsoria en otras situaciones. Aquí supondremos que la Ley núm. 33 establece el seguro compulsorio al extremo de que se resolvería que una póliza expedida bajo la misma provee la responsabilidad contemplada por el estatuto aun cuando de la propia faz de la póliza se desprenda que provee una responsabilidad más limitada. Pero la cuestión es precisamente si, según alega el demandante, la Ley núm. 33 dispone que la póliza expedida de conformidad con la misma cubre un automóvil público, independientemente de quién sea el chófer. O si, según alega la compañía aseguradora, la Ley núm. 33 dispone que una póliza expedida bajo la misma cubrirá un automóvil público solamente cuando lo maneje su dueño como instrumento de trabajo; que la disposición en la póliza aquí envuelta limitando su responsabilidad a accidentes que ocurren mientras el P.A. 85 es guiado por su dueño como instrumento de trabajo está por tanto en armonía con la Ley núm. 33; y que en su consecuencia esta condición es válida y obliga a un tercero lesionado.

■■ Al decidir esta cuestión, encontramos que es significativo el hecho de que la Ley núm. 33 fué aprobada primordialmente, no para proporcionarle seguro al público, sino en beneficio de los dueños de automóviles que manejan sus propios automóviles públicos, con el fin de eximir el instrumento de trabajo de tales dueños de la amenaza de embargo. Esta conclusión emana de dos aspectos de la Ley núm. 33. En primer lugar, es un acto voluntario el que un dueño se

acoja a la Ley núm. 33. Un dueño de un automóvil público puede elegir no acogerse a los beneficios de sus disposiciones. En dicho caso, no hay protección para el público. En verdad, la compañía aseguradora afirma, sin que se le haya contradicho, que solamente uno de cada cinco automóviles públicos está cubierto por póliza expedida bajo la Ley núm. 33. Un estatuto de seguro compulsorio propiamente dicho no permitiría tan limitada protección para el público.

En segundo lugar, la opción a acogerse a la Ley núm. 33 con sus beneficios de seguro está limitada a los dueños de automóviles públicos que los guíen, resultando evidente que el fin primordial de la Ley núm. 33 fué el de proteger contra embargos el instrumento de trabajo de tales dueños. A este respecto, la póliza es similar en sus propósitos al artículo 249, inciso 4, del Código de Enjuiciamiento Civil, que exime de ejecución para pagar una sentencia, ''Las herramientas o instrumentos de un mecánico o artesano, necesarios para su oficio . . . ''.

En 1942 la Legislatura proveyó aun más protección para el dueño que opere su propio automóvil público como instrumento de trabajo. Demostró que la sección 1 de la Ley núm. 33 se aprobó siempre con el fin primordial de proteger a tales dueños añadiéndole una disposición de que ''A los efectos de la ley disponiendo que las costas en casos criminales sean impuestas al acusado, aprobada en 9 de marzo de 1911, se considerará que es insolvente el dueño de un automóvil público que es el instrumento de trabajo de dicho dueño, conforme se define en esta Ley, pero esta determinación se limitará a aquellos casos 'misdemeanor' relacionados con el uso y manejo de dicho automóvil.'' (Artículo 9 de la Ley núm. 55, Leyes de Puerto Rico, 1942, (1) pág. 527).

Las disposiciones penales de las Leyes núms. 33 y 55 también sugieren éste resultado. Como hemos visto, la Ley núm. 33 disponía que incurriría en delito menos grave cualquier persona que poseyera más de un vehículo y que tra-

tase de obtener los beneficios de dicha ley. Y el artículo 9 de la Ley núm. 55 le añadió la disposición de que "Toda persona que manejare un automóvil público objeto del beneficio de la exención aquí establecida sin ser dueño de dicho automóvil o sin estar autorizado para ello por el Comisionado del Interior en su caso, incurrirá en delito menos grave, y convicto que fuere se le castigará con multa . . . o cárcel . . . ". Estas disposiciones penales impiden se burle el propósito de la Ley núm. 33 por aquellos dueños que de alguna manera pudieran comprar un número de automóviles y, después de obtener para cada uno de ellos los beneficios del fondo de seguro provisto en la Ley núm. 33, emplear chóferes para que los exploten como automóviles públicos. Por tanto vemos que estas disposiciones penales nos llevan a la misma conclusión: el propósito de la Ley núm. 33 fué que solamente se aplicarán los beneficios del seguro en ella provistos a aquellos casos en que el propio dueño siempre maneje su automóvil público como instrumento de trabajo.

Según se ha indicado, bajo un estatuto típico de seguro compulsorio el asegurado debe obtener una póliza de seguro por una suma específica como condición precedente a la explotación de su automóvil en la vía pública. Aquí el dueño no tiene que obtener póliza alguna. Ingresa veintinueve dólares al fondo. Entonces, hasta donde él sepa, al Tesorero puede no serle posible obtener seguro alguno con este fondo. El Tesorero tiene la obligación de obtener de la aseguradora el mayor seguro que le sea posible con este fondo, quien "en subasta pública convocada al efecto . . . ofrezca las mejores condiciones . . . ". El Tesorero aceptó la postura de la compañía aseguradora demandada, que constaba de una póliza de mil dólares con la responsabilidad limitada a los accidentes que ocurrieran mientras el dueño manejara su automóvil público como instrumento de trabajo. Nada hay en el propósito de la Ley núm. 33 que prohiba este contrato. Más bien, esta limitación de responsabilidad está más en ar-

monía con el espíritu del estatuto que una responsabilidad mayor. Independientemente del hecho de que si el contrato de seguro dispusiera que la aseguradora era responsable cuando el automóvil no fuera manejado por su dueño esto sería una clara violación de las disposiciones penales de las Leyes núms. 33 y 55 que prohiben dicha práctica, el proveer esa responsabilidad mayor inevitablemente requeriría una rebaja en la suma por la cual la compañía estaría dispuesta a ser responsable a cambio de veintinueve dólares. Y una responsabilidad menor que la actual ascendente a mil dólares, operaría en contra del fin primordial del estatuto: la obtención de suficiente responsabilidad para impedir que se embargue un automóvil público manejado por su propio dueño como instrumento de trabajo.

Nada encontramos en el lenguaje de la Ley núm. 33 que destruya el propósito de dicho estatuto de proveer un seguro que cubra a un automóvil público solamente si es manejado por su dueño como instrumento de trabajo. Por el contrario, creemos que, leyendo en su totalidad la sección 1 de la Ley núm. 33 y teniendo en mente el propósito del estatuto, la disposición allí provista de que la póliza cubrirá solamente los accidentes causados por "dicho vehículo" significa que la póliza cubrirá solamente los accidentes causados por el vehículo mientras sea manejado por su dueño como instrumento de trabajo.

Podría argüirse que el símbolo "P.A." en la tablilla de un automóvil público indica a los pasajeros que el automóvil está asegurado, no importa quién sea el chófer. La contestación es que la Legislatura ha dispuesto que sea una indicación restringida: este automóvil público está asegurado, siempre que sea conducido por su dueño.

Sólo queda por distinguir el caso de *Rondón*. Ese caso envolvía un reglamento de la Comisión de Servicio Público que proveía una suma fija de seguro y una responsabilidad absoluta para todos los accidentes ocasionados debido

al negligente manejo de un vehículo de motor explotado como porteador público, ya fuera éste manejado personalmente por el asegurado o por su agente. Toda vez que éste era un caso típico de seguro compulsorio, seguimos la bien establecida doctrina de que en tal caso la aseguradora no podía invocar contra un tercero lesionado la defensa de que el chófer "no tenía la edad ni la licencia requeridas por la ley".

Según dijimos en el caso de *Rondón,* fué (pág. 453) "la intención del legislador . . . dar a los que viajan en *autobuses* públicos y a los viandantes la garantía absoluta de una fianza . . . ". Y citamos con aprobación del caso de *Guillard* v. *Manufacturers' Casualty Ins. Co.,* 104 Atl. 707 (N. J., 1918) que (pág. 451) "La póliza de seguro es radicada solamente para beneficio de las personas que puedan ser lesionadas. . . . El único beneficiario del estatuto es la persona lesionada."

El reglamento de la Comisión de Servicio Público daba por sentado que el automóvil constantemente cambiaría de chófer. Y disponía, principalmente para beneficio del público, como condición precedente a la explotación del vehículo en la transportación de pasajeros mediante paga, que se expidiera una póliza conteniendo una suma específica como límite de la responsabilidad en caso de cualquier accidente, no importa quién guiara. Aquí tenemos una póliza que en primer lugar es opcional, opción que la tiene exclusivamente el dueño de un carro público que lo maneje como instrumento de trabajo. Si el dueño elige hacer uso de esta opción, el estatuto provee una póliza con responsabilidad indefinida. Pero esta póliza es primordialmente para su beneficio para impedir que le embarguen el automóvil; a este extremo por lo menos, la póliza es más bien un seguro voluntario donde el asegurado, si bien proporcionándole protección al público, principalmente está interesado en proteger su propiedad y a sí mismo contra pleitos de daños y

perjuicios. Por tanto, este caso es obviamente diferente al de *Rondón*. Y toda vez que la Ley núm. 33 contempla que solamente un automóvil público manejado por su dueño tendrá derecho a los beneficios de la misma, una póliza expedida de conformidad con la misma puede correctamente limitarse a accidentes que ocurren mientras el dueño maneja el automóvil como su instrumento de trabajo.

La doctrina de que no pueden insertarse condiciones en una póliza de seguro compulsorio en perjuicio de los pasajeros o de los viandantes está desde luego sujeta a la excepción de que la póliza puede contener condiciones que guarden armonía con el estatuto que exige la póliza. *Cf.* Anotación, 141 A.L.R. 628; *Simon* v. *American Casualty Co. of Reading, Pa.,* 146 F.2d 208 (C.C.A. 4th, 1944); *Travelers Ins. Co.* v. *Caldwell,* 133 F.2d 649 (C.C.A. 8th, 1943); *Foster* v. *Commercial Standard Ins. Co.,* 121 F.2d 117 (C.C.A. 10th, 1941); *Stewart* v. *Hoffmeister,* 65 S.W.2d 220 (Tenn., 1932). La condición de la póliza en este caso en cuanto a que la responsabilidad se limitaba a aquellos accidentes que ocurrieran mientras el automóvil lo manejara su dueño como su instrumento de trabajo, no estaba en conflicto con la Ley núm. 33. Y toda vez que la esposa del demandante fué lesionada en un accidente que ocurrió mientras el automóvil era manejado por una persona que no era su dueño, la compañía aseguradora aquí demandada no es responsable de dichas lesiones bajo los términos de la póliza.

La opinión concurrente descansa en fundamentos mucho más amplios que los expuestos en esta opinión. Si aceptáramos el razonamiento del Juez Asociado Sr. Córdova, estaríamos en efecto resolviendo (1) que la Ley núm. 33 provee una póliza que es enteramente voluntaria, y (2) que como consecuencia una póliza expedida de conformidad con dicha Ley podría válidamente disponer, en perjuicio de un tercero lesionado, cualesquiera condiciones convenidas entre la aseguradora y el asegurado. De acuerdo con esta teoría,

por ejemplo, la póliza podría correctamente disponer que el dejar el asegurado de notificar a la aseguradora la ocurrencia de un accidente, dentro de las 24 horas siguientes al accidente, relevaría a la aseguradora de responsabilidad en cuanto a un tercero lesionado. Pero tendremos tiempo suficiente para exponer nuestro punto de vista en tales casos cuando éstos surjan. El presente caso puede decidirse resolviendo que aún si la póliza de la Ley núm. 33 fuera un seguro compulsorio hasta el extremo ya expuesto, dicha Ley núm. 33 contempló el que se limitara la responsabilidad en cuanto a accidentes siempre que el automóvil fuera manejado por su propio dueño como instrumento de trabajo, disposición que obliga, por tanto, a un tercero lesionado.

*Por las razones expuestas, se dejarán sin efecto nuestra opinión y sentencia revocando la sentencia de la corte de distrito, y se dictará nueva sentencia confirmándola.*

OPINION CONCURRENTE DEL JUEZ ASOCIADO SR. CORDOVA

Aunque estoy de acuerdo con la opinión de la Corte, prefiero basar la decisión sobre el fundamento que a continuación expongo.

No estamos ante un caso en que la legislatura haya determinado, expresa o tácitamente, el montante y las condiciones de un seguro obligatorio. Cuando se legisla imponiendo requisitos mínimos de seguro obligatorio, la legislatura no suele, ni puede, decir cuánto se pagará por el seguro. Se paga lo que cueste. Igual ocurre con cualquier otro requisito mínimo que impone la legislatura para la seguridad o el bienestar del público, como, por ejemplo, el de que los automóviles tengan luces adecuadas al transitar de noche. No importa lo que cuesten las luces que cumplan con los requisitos mínimos: hay que tenerlas. Si la legislatura sólo hubiera dispuesto que todo dueño de automóvil lo equipare con aquellas luces que pudiesen comprarse con un dólar las luces exigidas serían aquellas que pudiesen comprarse

por un dólar. Eso es todo lo que ha provisto la legislatura en la Ley núm. 33 de 1941, en cuanto al seguro de automóviles públicos. Sólo ha provisto el legislador aquel seguro que el Tesorero pueda comprar por veintinueve dólares y ha añadido que el Tesorero lo comprará a aquel asegurador que "ofrezca las mejores condiciones". Es evidente que las únicas condiciones que ha exigido la legislatura son aquellas que pueda obtener el Tesorero pagando veintinueve dólares por cada vehículo asegurado. Si para obtener un seguro hasta $1000 el Tesorero tuvo que convenir en que sólo respondería el asegurador en aquellos casos en que el dueño del vehículo lo guiaba, ese convenio está en perfecta armonía con la Ley y es válido y obligatorio.

#### OPINION DISIDENTE DEL JUEZ PRESIDENTE SEÑOR TRAVIESO CON LA CUAL CONCURRE EL JUEZ ASOCIADO SEÑOR TODD, JR.

Junio 26, 1946

Por las razones que expondré en el curso de esta opinión me siento obligado a disentir de la dictada por el Tribunal en el presente caso.

Los hechos sobre los cuales no existe controversia, son los siguientes:

El demandante y su esposa viajaban como pasajeros en el automóvil público asegurado "P.A. 85", cuando como consecuencia de la alegada negligencia del conductor del vehículo, la esposa del demandante, aquí apelante, sufrió lesiones de carácter grave, por las que reclama indemnización en la suma de $5,000. En el momento en que ocurrió el accidente, el automóvil era conducido por el chófer y no por su dueño, el demandado Gregorio Cruz Rivera. Se alega en la demanda que en el momento del accidente el carro estaba asegurado por la United States Casualty Co. of New York, para responder por los accidentes causados por dicho vehículo a los pasajeros y a terceras personas, hasta la suma de $1,000, de acuerdo con las disposiciones de la Ley núm. 33 de abril 14 de 1941.

En su contestación, la Compañía aseguradora negó los hechos esenciales de la demanda y como defensas especiales alegó: (*a*) la insuficiencia de los hechos alegados para constituir causa de acción; (*b*) que la póliza sólo cubría al codemandado Gregorio Cruz Rivera, como dueño del vehículo; y (*c*) que entre las condiciones especiales de la póliza expedida a favor de Gregorio Cruz Rivera, figuran las siguientes:

"3. Esta póliza tendrá efecto solamente mientras los vehículos asegurados sean guiados por sus dueños, cuyos nombres se mencionan en el endoso anexo.

"4. Esta póliza no cubrirá ningún accidente cuando los vehículos fueren guiados por cualesquiera otras personas que no sean las mencionadas como dueños de los carros en el endoso anexo y ninguna sustitución de cualquier conductor será válida a menos que se haya expedido un endoso escrito por los agentes generales de la Compañía.

"5. No se hará ninguna sustitución a menos que haya habido un cambio de dueño del carro y que el vehículo haya de ser usado por su nuevo dueño como su instrumento de trabajo, de acuerdo con lo dispuesto por la Ley núm. 33, aprobada en abril 14 de 1941."

Alegó además la Compañía demandada, que el artículo 3 del Reglamento para poner en vigor la citada Ley núm. 33, impone al dueño del automóvil asegurado la obligación de notificar a los agentes de la Compañía, dentro de un período no mayor de 24 horas, cualquier accidente en el cual resulte lesionado algún pasajero; que el cumplimiento de ese requisito es indispensable para poder obligar a la Compañía a satisfacer la indemnización convenida; que ni el asegurado ni persona otra alguna dió aviso a la Compañía demandada, habiendo tenido conocimiento la aseguradora de la ocurrencia del accidente por primera vez al radicarse la demanda; que en el momento del accidente el automóvil no estaba siendo guiado por su dueño, el asegurado, como instrumento de trabajo; que la persona que conducía el vehículo en el momento del accidente no estaba autorizada por el Gobierno de Puerto Rico para conducir vehículos de motor; y que no existe relación contractual o de otra índole entre la demandante y el

conductor del vehículo, a virtud de la cual venga obligada la aseguradora a pagar la indemnización que se le reclama.

A moción de la Compañía demandada para que se dictara una sentencia sumaria, la corte inferior la dictó declarando sin lugar la demanda en cuanto a la Compañía aseguradora.

Sostiene el apelante que la corte inferior erró al resolver que la póliza expedida por la demandada no cubre nada más que los accidentes ocurridos mientras el vehículo es guiado por la persona que aparece inscrita como dueño en el Departamento del Interior; al no considerar prueba sobre las circunstancias en que el vehículo iba guiado por una persona que no era su dueño; y al dictar sentencia sumaria, aplicando erróneamente la Núm. 56 de las Reglas de Enjuiciamiento Civil.

La única cuestión que debemos considerar y resolver es si una póliza expedida bajo las condiciones anteriormente expuestas cubre un accidente ocurrido en momentos en que el carro asegurado iba guiado por una persona que no era su dueño y que no estaba autorizada para guiar vehículos de motor.

El artículo 10 de la Ley para Reglamentar el Uso de Vehículos de Motor, aprobada en abril 13, 1916, según fué enmendado por la Ley núm. 33 de abril 14 de 1941, dispone que "el automóvil que su dueño destina a porteador público, si lo maneja él mismo y no posee, domina o controla otros vehículos de motor destinados a la transportación de pasajeros por paga, se considerará que es su instrumento de trabajo y, como tal, no pagará licencia alguna ni su dueño pagará derecho alguno por el uso y manejo de tal automóvil". El citado artículo provee, además, lo siguiente:

"El dueño de un automóvil que actúa de porteador público y reciba el beneficio de exención del pago de licencia por considerarse dicho automóvil como instrumento de trabajo, pagará la suma de veintinueve (29) dólares por año. . . Dicha suma de $29.00 ingresará en un fondo especial en la Tesorería de Puerto Rico y será utilizado

por el Tesorero de Puerto Rico para pagar la prima de *una póliza de seguro que cubra los accidentes causados por dicho vehículo* a los pasajeros que viajan en el mismo y a terceras personas, y a tal fin el Tesorero de Puerto Rico satisfará dicha suma de $29.00 al asegurador que en subasta pública . . . ofrezca las mejores condiciones y reciba la buena pro en dicha subasta. . . .

"  *   *   *   *   *   *   *

"No podrá transitar por las carreteras de Puerto Rico ningún porteador público que haya obtenido los beneficios de la exención aquí establecida que no haya pagado dicha suma para la mencionada póliza de seguro. El Tesorero de Puerto Rico expedirá un certificado de tal pago que se fijará en una parte visible del automóvil." (Bastardillas nuestras.)

Al aprobar las disposiciones legales transcritas, el legislador tuvo dos propósitos: (1) Conceder al dueño de un automóvil, cuando lo maneja él mismo, como instrumento de trabajo, y se dedica al servicio público, exención del pago de licencia por el uso del vehículo; y (2) en consideración a dicha exención, imponer al dueño del vehículo la obligación de pagar la suma necesaria para satisfacer la prima de una póliza de seguro que cubra los accidentes causados por dicho vehículo.

Se trata, pues, de un contrato de seguro entre el dueño de un vehículo dedicado al servicio del público y la compañía aseguradora, a favor y para beneficio de cualquier pasajero o viandante que pueda resultar lesionado como consecuencia de accidentes causados por dicho vehículo. Que el seguro es de carácter involuntario y compulsorio lo demuestra el mismo estatuto al disponer que el vehículo no podrá transitar por las carreteras públicas hasta que su dueño haya pagado la suma necesaria para obtener la póliza de seguro.

El estatuto que estamos considerando no dispone ni expresa ni tácitamente que la póliza cubrirá solamente aquellos accidentes ocurridos mientras el dueño del vehículo lo estuviere guiando personalmente. Es la póliza expedida en este caso la que así lo dispone, de acuerdo con las condicio-

nes especiales, supra. ¿Son esas condiciones obligatorias para la víctima del accidente, tratándose como se trata en el presente caso de un seguro involuntario y compulsorio? Veamos.

En *Rondón* v. *Aetna Casualty & Surety Co.*, 56 D.P.R. 439, se trataba de una póliza radicada por un porteador público "para responder de la indemnización que se adjudicare a cualquier persona lesionada como resultado de un accidente causado por negligencia del porteador o de sus empleados". Alegó la compañía aseguradora que el porteador asegurado había violado las condiciones de la póliza porque en el momento del accidente el vehículo era manejado por una persona que no tenía ni la edad ni la licencia para guiar, requeridas por la ley, quedando por ello la compañía aseguradora libre de responsabilidad bajo la póliza.[1] La prueba demostró que el conductor del vehículo en el momento del accidente no tenía licencia y no había cumplido la edad de 16 años fijada por la Ley para poder obtenerla; y que en la póliza se estipulaba expresamente que la compañía no sería responsable cuando el automóvil fuere guiado por una persona menor de 16 años. La Corte de Distrito falló a favor de la compañía aseguradora, sosteniendo que las defensas interpuestas por ésta contra el asegurado eran válidas en contra de la persona lesionada. Este Tribunal revocó la sentencia de la corte *a quo* y también su propia decisión en una apelación anterior entre las mismas partes (46 D.P.R. 613), resolviendo de acuerdo con jurisprudencia de los tribunales estatales [2] que cuando el seguro es compulsorio o sea cuando la póliza ha sido expedida en cumplimiento de un estatuto que requiere su radicación para poder obtener una

---

[1] *González* v. *U.S. Casualty Co.*, 55 D.P.R. 668; *Coleman* v. *New Amsterdam Casualty Co.*, 247 N.Y. 271; *Hynding* v. *Home Accident Ins. Co.*, 214 Cal. 743; *Nelson* v. *Ins. Co.*, 111 N.J. Law, 345; Véase Monografía 106 A.L.R. 516, 532.

[2] *Gillard* v. *Manufacturers' Casualty Ins. Co.*, (N.J.) 104 A. 707; *Gillard* v. *Manufacturers' Ins. Co.*, 107 A. 446; *Boyle* v. *Manufacturers' Liability Ins. Co.*, 115 A. 383.

licencia autorizando al asegurado a dedicarse al transporte de pasajeros mediante paga, la póliza no puede contener disposición alguna que no esté autorizada por el estatuto, de manera que pueda afectar a cualquier persona que sufra daños causados por el vehículo asegurado.

El art. 10 de la Ley para Reglamentar el Uso de Vehículos de Motor, supra, impone al porteador público la obligación de pagar la prima de una póliza de seguro que cubra los accidentes causados por el vehículo a los pasajeros que viajen en el mismo, como condición precedenté a su derecho a transitar por las carreteras de Puerto Rico. No encontramos en dicho artículo ni en ninguna otra parte de la Ley disposición alguna al efecto de que la póliza requerida por el estatuto protegerá al pasajero y al viandante solamente cuando el dueño del vehículo se encontraba guiándolo en el momento del accidente. Es cierto que en la póliza expedida en este caso se insertó como una condición especial la de que la póliza "no cubrirá ningún accidente cuando los vehículos fueren guiados por cualesquiera otras personas que no sean las mencionadas como dueños de los carros en el endoso anexo" a menos que se haya autorizado la sustitución por los agentes generales de la compañía. Empero, esa condición no es obligatoria para la persona lesionada. Como se dijo en *Gillard* v. *Manufacturers' Casualty Inc. Co.,* supra:

"Cualesquiera otras disposiciones contenidas en la póliza radicada pueden ser válidas entre el asegurador y el dueño del automóvil, el asegurado, y pueden imponer a este último ciertos deberes y obligaciones, por el incumplimiento de los cuales el asegurador puede entablar una acción; pero esas disposiciones no pueden privar a una persona lesionada del remedio provisto por el estatuto, ni pueden en modo alguno restringir los derechos concedidos por el estatuto a esa persona lesionada. . . El único beneficiario del estátuto es la persona lesionada. Esta es la única que puede demandar sobre la póliza y citar el estatuto como fundamento de su acción. Los derechos de la persona lesionada, en la póliza de seguro, son originales y primarios, no derivados y secundarios."

No vemos razón alguna para que la doctrina sentada en el caso de *Rondón* v. *Aetna Casualty & Surety Co.*, supra, no sea aplicable al caso de autos. En aquél, como en éste, el dueño del vehículo asegurado permitió, en violación de ciertas condiciones de la póliza, no requeridas por el estatuto, que el carro fuese guiado por una persona que no tiene licencia para guiar vehículos de motor. Al requerir el seguro de los automóviles destinados al servicio del público, el legislador tuvo el propósito de dar a las personas que viajan en dichos vehículos y a los viandantes una garantía absoluta de que habrán de ser indemnizados por los daños y perjuicios que pueda causarles la negligencia del porteador público o de las personas a quienes él confíe la conducción de los vehículos. Esa garantía no puede ni debe ser menoscabada ni afectada en manera alguna por las estipulaciones que el asegurador y el asegurado hayan creído conveniente insertar en el contrato de seguro para regular las relaciones entre las partes contratantes. El incumplimiento de esas estipulaciones dará sin duda alguna un derecho de acción al asegurador en contra del asegurado, pero no puede ser alegado para privar al lesionado de la protección que le garantiza el estatuto.

El error fundamental de la opinión del Tribunal aparece claramente en el siguiente párrafo:

"Existen ciertas diferencias entre la Ley núm. 33 y un estatuto típico de seguro compulsorio. (Citas.) *Primera*—de conformidad con el último el dueño del automóvil no tiene opción; debe proveerse de una póliza de seguro. Pero bajo la Ley núm. 33, un dueño puede o no optar por ingresar en el fondo de seguro la suma de veintinueve dólares. En vez de pagar los veintinueve dólares, puede pagar el derecho de licencia corriente y funcionar como un porteador público sin seguro."

Es indiscutible que al dueño de un solo automóvil, el cual utiliza como instrumento de trabajo, no se le puede obligar a someterse a las disposiciones de la citada Ley núm. 33. Él puede, a su elección, acogerse a los beneficios de dicha

ley o dedicarse al negocio de transportación de pasajeros, pagando los derechos de licencia fijados por las leyes vigentes. Pero parece igualmente indiscutible que cuando el dueño del vehículo ha ejercitado esa opción y se ha acogido a los beneficios de la Ley núm. 33—exención de pago de derechos de licencia y posiblemente exención de embargo del automóvil por ser éste declarado "instrumento de trabajo"—desde ese momento recae sobre él, compulsoriamente y sin opción de clase alguna, la obligación de pagar la suma de $29 por año para cubrir la prima "de una póliza de seguro que cubra los accidentes causados por dicho vehículo" a los pasajeros y terceras personas. La situación es comparable a la de una persona admitida al ejercicio de la abogacía. Nadie podría obligarle a ejercer como notario. El abogado puede, a su opción, ejercer o no el notariado. Pero si opta por ejercerlo, entonces está compulsoriamente obligado a constituir la fianza requerida por la ley. Igual puede decirse del dueño de una o más guaguas. Este puede circular libremente por las carreteras y calles públicas, sin estar obligado a asegurar el vehículo. Pero si opta por dedicar sus vehículos al servicio público de transportación de pasajeros, entonces recae sobre él la ineludible obligación de tomar una póliza de seguro antes de poder dedicarse a dicho negocio.

Que el seguro que se requiere por el artículo 10 de la Ley núm. 33, supra, es compulsorio se desprende de la disposición clara y terminante de que "no podrá transitar por las carreteras de Puerto Rico ningún porteador público que haya obtenido los beneficios de la exención aquí establecida que no haya pagado dicha suma *para la mencionada póliza.*" Y como evidencia de que el mandato de la ley ha sido cumplido y de que el vehículo transita legalmente por las carreteras, la ley dispone que el automóvil deberá llevar en una parte visible del mismo un certificado de pago expedido por el Tesorero.

Es cierto que la Ley núm. 33 no especifica cuál habrá de ser el montante (*coverage*) de la póliza. Solamente provee que el dueño de un automóvil que se ha acogido a los beneficios de la ley pagará la suma de $29 por año y que dicha suma "ingresará en un fondo especial en la Tesorería de Puerto Rico y será utilizado por el Tesorero de Puerto Rico para pagar la prima de una póliza de seguro que cubra los accidentes causados por dicho vehículo." El Tribunal es de opinión que el hecho de que el estatuto no fije específicamente el montante de la póliza es suficiente para quitar al seguro el carácter de compulsorio, dejando a la víctima de un accidente sujeta a todas las defensas que la compañía aseguradora pudiera interponer contra el dueño del vehículo por incumplimiento de las condiciones de la póliza. Respetuosamente opinamos que el Tribunal ha incurrido en error por no haber tenido en cuenta el claro y evidente propósito del legislador.

Siendo los dos propósitos fundamentales del estatuto ayudar, mediante la exención de pago de derechos de licencia, a las numerosas personas dueñas de un solo automóvil y proteger a las víctimas de accidentes causados por los vehículos mediante una póliza de seguro, el legislador quiso proteger a unos y a otros proveyendo lo necesario para obtener la mayor protección (*coverage*) posible con los $29 que la ley obliga a pagar a cada dueño de vehículos. A ese efecto dispuso que los $29 por año serán pagados al Tesorero de Puerto Rico, para formar un fondo especial que será utilizado por el Tesorero para pagar la prima de la póliza de seguro. Para evitar que cada dueño de un vehículo tenga que conseguir el seguro que pueda obtener por $29 de prima y hacer posible la obtención de una protección mayor mediante la contratación de un seguro colectivo (*group insurance*) de todos los vehículos que operan como porteadores públicos bajo la Ley núm. 33, el legislador proveyó para la creación de un fondo global, constituyó al Tesorero en

agente de los dueños de dichos vehículos y le impuso la obligación de utilizar el fondo especial para obtener una póliza de aquel asegurador que en subasta pública ofrezca las mejores condiciones.

No podemos estar conformes con la conclusión del Tribunal de que el estatuto no dispone que la expedición de la póliza deberá ser una condición precedente al derecho de traficar con el automóvil por las carreteras públicas; y que todo lo que tiene que hacer el dueño del vehículo es pagar la suma de $29, quedando *ipso facto* autorizado para dedicarse al negocio de transportar pasajeros, sin tener que preocuparse de si se ha obtenido o no la póliza. Ya hemos visto que el estatuto dispone que no podrá transitar por las carreteras el porteador público que no haya pagado dicha suma ''para la mencionada póliza''. La suma de $29 se paga para un propósito específico; y se paga al Tesorero como agente de los dueños de carros, para que cumpliendo el mandato imperativo de la ley invierta la suma total por él recibida en la compra de la mejor póliza que pueda obtener en subasta pública. Para poder aceptar las conclusiones de la Corte tendríamos que introducir en la ley una nueva opción, o sea que el Tesorero puede, a su elección, obtener la póliza o no obtenerla; y tendríamos que resolver que en uno y en otro caso el dueño del vehículo tiene derecho a circular por las carreteras, importándole poco la protección que la ley ha querido darle a los pasajeros y viandantes.

Tampoco podemos aceptar como correcta la interpretación que se da al estatuto en el sentido de que el Tesorero está facultado por la ley para aceptar e incluir en la póliza cualesquiera condiciones que la compañía aseguradora tenga a bien exigir, aun cuando esas condiciones estén en conflicto con disposiciones expresas del estatuto. Las condiciones especiales 3, 4 y 5 incluídas en la póliza en el presente caso, supra, en las cuales se estipula que la póliza tendrá efecto

solamente "mientras *los vehículos asegurados* sean guiados por sus dueños" y no cubrirá ningún accidente cuando los vehículos fueren guiados por cualesquiera otras personas, están en abierto conflicto con las disposiciones del artículo 10 de la Ley núm. 33, supra, que ordena al Tesorero de Puerto Rico utilizar el fondo especial "para pagar la prima de una póliza de seguro que cubra *los accidentes causados por dichos vehículos*". El estatuto requiere una póliza que proteja a los pasajeros y viandantes contra accidentes causados por cualquier vehículo asegurado que se dedique a la transportación de pasajeros y no limita ni permite que se limite la responsabilidad del asegurador a aquellos accidentes ocurridos mientras el dueño conducía el vehículo. Opinamos que ni el Tesorero de Puerto Rico ni este Tribunal están autorizados para incluir en la póliza requerida por el estatuto las limitaciones de la responsabilidad del asegurador contenidas en las mencionadas condiciones especiales 3, 4 y 5.

Somos de opinión que cuando un vehículo asegurado de acuerdo con los requisitos de la Ley núm. 33 causa daños a un pasajero o a un viandante, la compañía aseguradora es responsable del pago de dichos daños, hasta el montante de la póliza obtenida por el Tesorero, no solamente cuando el vehículo es guiado por su dueño si que también cuando es guiado por cualesquiera otras personas con el consentimiento del dueño y para beneficio de éste, en el negocio de porteador público.

Por las razones expuestas, opinamos que la sentencia sumaria recurrida debió ser revocada y el caso devuelto a la Corte de Distrito de Bayamón para ulteriores procedimientos.