Luz Raquel Arvelo, conocida por Luz Raquel Soto, asistida de su madre natural Josefina Arvelo, demandante y apelada, *v.* Francisco Rodríguez Cuevas, demandado y

apelante; HARTFORD ACCIDENT AND INDEMNITY Co., interventora y apelante.

Núm. 9745.—*Sometido:* Junio 2, 1948. *Resuelto:* Julio 16, 1948.

*Ramón Ferrer Delgado,* abogado del demandado apelante; *R. Rodríguez Lebrón,* abogado de la interventora, apelante; *Luis Mercader,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Luz Raquel Arvelo, asistida de su madre natural Josefina Arvelo, instó demanda de daños y perjuicios contra Francisco Rodríguez Cuevas. En ella alegó que el 17 de agosto de 1946, como a las 7 p.m., se encontraba al lado iz-

quierdo de la carretera que conduce de Quebradillas a Camuy; que en ese momento el demandado conducía a mucha velocidad un automóvil marca Ford y que éste negligentemente y saliéndose de su derecha chocó con ella y le produjo lesiones en la cabeza y en otras partes del cuerpo.

La Hartford Accident & Indemnity Co. solicitó intervención y la misma le fué concedida. Así las cosas, fué el pleito a juicio y luego de oír a numerosos testigos de una y otra parte la corte a quo declaró con lugar la demanda y condenó al demandado a satisfacer a la demandante la suma de $800, más las costas y $100 para honorarios de abogado. Declaró además en su sentencia que la interventora era también responsable por el importe de ella, a virtud de la póliza que asegura al demandado por accidentes de tal naturaleza. Tan sólo la Hartford Accident & Indemnity Co. ha apelado de la sentencia así dictada y en su alegato sostiene que la corte inferior erró al declarar sin lugar las defensas especiales por ella suscitadas y al no exonerarla de responsabilidad. Dichas defensas fueron al efecto de que el accidente no está cubierto por el contrato de seguro, por razón de que el vehículo no estaba dedicado a la transportación de pasajeros mediante paga al momento de ocurrir el accidente y porque dicho vehículo no estaba siendo utilizado dentro de la ruta autorizada por la Comisión de Servicio Público.

La prueba demostró que el vehículo en cuestión—una guagüita de las conocidas por "cariocas"—pertenecía a Francisco Rodríguez Vega, padre del demandado Francisco Rodríguez Cuevas, y estaba asegurado a nombre de aquél. (La interventora admite que el hecho de no estar siendo el vehículo conducido por su dueño al momento del accidente no la exime de responsabilidad.) Igualmente reveló la prueba que en la tarde del indicado día Francisco Rodríguez Cuevas, con la anuencia y aquiescencia de su padre, se trasladó con un número de invitados al Barrio Calero, de Aguadilla, donde sus bodas fueron celebradas y que al regresar de allí

a Camuy y allá para las 7 ó 7:30 de la noche tuvo lugar el accidente. Aunque varios testigos declararon que al ocurrir el mismo, en adición a sus invitados, Rodríguez Cuevas transportaba a varios pasajeros mediante paga, la corte inferior no dió crédito a éstos y concluyó que en el vehículo solamente venían los invitados del demandado. En cuanto a si el automóvil viajaba o no dentro de la ruta fijádale por la Comisión de Servicio Público, la prueba demostró que para aquel entonces no existían rutas fijas y que los vehículos públicos podían transitar libremente en cualesquiera direcciones. Así pues, la única cuestión en controversia es si no estando el vehículo asegurado transportando pasajeros mediante paga en el momento en que ocurrió el accidente, la póliza de seguros expedida por la interventora cubre los daños y perjuicios causados a un tercero.

De acuerdo con el artículo 9 de la Ley número 279 de 5 de abril de 1946 (págs. 599, 621) los automóviles de servicio público de siete pasajeros o menos pagarán $50 y los de 8 a 10 pasajeros $60 de derechos al año. Dispone el artículo 10(a) de la misma Ley, que:

"Todo vehículo de motor con capacidad no mayor de diez (10) pasajeros, dedicados a la transportación de pasajeros mediante paga como porteador público, incluyendo los que se consideran como instrumento de trabajo, pagará en adición a los derechos anteriormente prescritos, en sellos especiales de rentas internas en los cuales aparecerá impresa la frase 'Auto Público Asegurado', la suma de (veintinueve dólares) $29, pagaderos en el término comprendido entre el 1ro. y el 15 de julio de cada año. Dicha suma anual de $29 o la parte de ella correspondiente a la fracción del año ingresará en un fondo especial en la Tesorería de Puerto Rico a disposición del Comisionado y será utilizado por éste para pagar la prima de una póliza de seguro que cubra los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo, al chófer, a terceras personas o cualquier otro riesgo adicional que la Compañía Aseguradora esté dispuesta a asumir, y a tal fin el Comisionado satisfará dicha suma de veinte y nueve (29) dólares por cada asegurado al Fondo del Seguro del Estado o al asegurador que

en subasta pública convocada al efecto por la Comisión de Suministros del Gobierno Insular, ofrezca las mejores condiciones y reciba la buena pro en dicha subasta, conforme a las reglas que a tales efectos fijare la citada Comisión de Suministros. . . . .''

A tenor con la anterior disposición de ley, la Hartford Accident & Indemnity Co. libró una póliza de seguros sobre el vehículo a que ya nos hemos referido. La póliza así expedida provee en sus condiciones adicionales aplicables al seguro de vehículos públicos que no sean instrumentos de trabajo de sus dueños, y conocidos por carros ''P'', que:

''6.—Esta póliza responderá solamente mientras los vehículos aquí descritos sean utilizados para el transporte de pasajeros, mediante paga, en las carreteras o calles públicas de esta Isla y de conformidad con los Reglamentos de la Comisión de Servicio Público de Puerto Rico, incluyendo los Reglamentos sobre rutas.''

Tres casos ha resuelto hasta ahora este Tribunal en relación con pólizas expedidas en favor de dueños de vehículos dedicados a la transportación de pasajeros mediante paga, en que se ha exigido responsabilidad de la compañía a pesar de haberse violado los términos de la póliza. El primero de ellos lo fué el de *Rondón* v. *Aetna Casualty & Surety Co.*, 56 D.P.R. 439. En ese caso Juan Basabe, dueño de una guagua dedicada al negocio de transportar pasajeros mediante paga en la ciudad de San Juan, obtuvo de conformidad con el Reglamento de la Comisión de Servicio Público una póliza de seguros para responder de los daños y perjuicios que pudieran ocasionarse a cualquier persona lesionada como resultado de un acto fortuito proveniente de la negligencia del porteador o de sus empleados, hasta la suma de $3,000. Sobrevino el accidente y la aseguradora sostuvo que ella no era responsable porque al ocurrir el mismo el vehículo era manejado por una persona que no tenía ni la edad ni la licencia requeridas por la ley y que en su consecuencia ella quedaba libre de responsabilidad bajo la póliza. Se resolvió que el allí envuelto era un seguro com-

pulsorio y que la compañía respondía de daños y perjuicios a pesar del hecho de haber violado el asegurado los términos de la póliza.

El segundo lo fué el de *Hernández* v. *Rosario*, 66 D.P.R. 294. En él se trataba de una póliza de seguros expedida de acuerdo con la Ley núm. 33 de 14 de abril de 1941 (pág. 549)(¹) a favor del dueño de un automóvil público "P.A." que constituía su instrumento de trabajo. La póliza proveía que la misma no cubriría ningún accidente que ocurriera mientras el automóvil se guiara por persona que no fuera su dueño. La esposa del demandante sufrió un accidente precisamente en momentos en que el vehículo asegurado era conducido por un extraño y al incoarse la correspondiente demanda de daños y perjuicios la compañía aseguradora sostuvo no ser responsable bajo los términos de la póliza. Decidió este Tribunal en opinión emitida por voz del Juez Asociado Sr. Snyder, con la que concurrieron los Jueces Asociados Sres. De Jesús y Córdova, que no se trataba de un seguro compulsorio y de que habiéndose violado los términos del contrato de seguro la compañía no era responsable. El Juez Presidente Sr. Travieso disintió

---

(¹)"Artículo 10.— . . . . Disponiéndose, sin embargo, que el automóvil que su dueño destina a porteador público, si lo maneja él mismo y no posee, domina o controla otros vehículos de motor destinados a la transportación de pasajeros por paga, se considerará que es su instrumento de trabajo y, como tal, no pagará licencia alguna ni su dueño pagará derecho alguno por el uso y manejo de tal automóvil. . . . .

"El dueño de un automóvil que actúa de porteador público y reciba el beneficio de exención del pago de licencia por considerarse dicho automóvil como instrumento de trabajo, pagará la suma de veintinueve (29) dólares por año, en plazos semestrales de $14.50, que se harán efectivos del día 1ro. al día 15 de los meses de enero y julio de cada año. Dicha suma de $29 ingresará en un fondo especial en la Tesorería de Puerto Rico y será utilizado por el Tesorero de Puerto Rico para pagar la prima de una póliza de seguro que cubra los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo y a terceras personas, y a tal fin el Tesorero de Puerto Rico satisfará dicha suma de $29 al asegurador que, en subasta pública convocada al efecto por la Comisión de Suministros del Gobierno Insular, ofrezca las mejores condiciones y reciba la buena pro en dicha subasta, conforme a las reglas que a tales efectos fijare la citada Comisión de Suministros. . . . . ."

y con la opinión por él emitida concurrió el Juez Asociado Sr. Todd, Jr.

Sobre cuestión similar se emitió en 17 de marzo de 1948 una opinión *Per Curiam* en el caso civil núm. 9592, intitulado *Juan Serrano Delgado* v. *Carlos Rosa Sánchez y U. S. Casualty Co.* En ese pleito, que es el tercero resuelto sobre la materia por esta Corte, la cuestión envuelta fué si el demandado Rosa Sánchez y la codemandada U. S. Casualty Co., como aseguradora, eran responsables de los daños causados al demandante al ser arrollado éste por el automóvil "P.A." propiedad del primero en momentos en que éste era conducido por un extraño. Los hechos demostraron que el automóvil de Rosa Sánchez había sido hurtado por Roberto Serrano; que el dueño del vehículo no dió su consentimiento a que Serrano lo guiara y además que el mismo no estaba siendo dedicado, en el momento del accidente, al negocio de porteador público para beneficio del dueño. Se resolvió que bajo esas circunstancias la compañía aseguradora no era responsable.

En el caso que nos ocupa, sin embargo, no están en controversia ni el Reglamento de la Comisión de Servicio Público ni la Ley núm. 33 de 1941 a que ya nos hemos referido. Ya hemos visto cómo rezan uno y otra. El artículo 10(*a*) supra, según se habrá notado, provee que todo vehículo de motor con capacidad de no más de diez pasajeros dedicado al negocio de porteador público mediante paga, en adición a los derechos prescritos en el artículo 9, pagará la suma de $29 y que la misma ingresará en un fondo especial y será utilizada para pagar la prima de una póliza de seguros que cubrirá los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo, al chófer, a terceras personas o cualquier otro riesgo adicional que la compañía aseguradora esté dispuesta a asumir. El pago de los $29 adicionales es obligatorio para todo dueño de un vehículo de motor de la cabida indicada dedicado a la transportación

de pasajeros mediante paga. No hay discreción alguna de su parte. El pago de los $29 y la expedición de la póliza no dependen de su voluntad una vez que se dedique a esa clase de negocios. No dice ese artículo que al momento de ocurrir el accidente el vehículo ha de estar transportando pasajeros mediante paga. Lo que sí dispone de manera taxativa es que si el vehículo se dedica a la transportación de pasajeros mediante paga su dueño necesariamente tiene que pagar, en adición a los derechos provistos por el artículo 9, la suma de $29. Ésta, según ya hemos dicho, se utilizará para obtener una póliza de seguros para los fines ya mencionados y se expide principalmente para beneficio de las personas indicadas y no para beneficio del dueño del vehículo. Es la póliza la que en una de sus cláusulas provee que, la aseguradora responderá solamente mientras el vehículo asegurado sea utilizado para transportar pasajeros mediante paga. El seguro aquí envuelto es indudablemente uno de carácter compulsorio y en un seguro de esta naturaleza los términos de una póliza no pueden ir más allá que las disposiciones de la ley a virtud de la cual la póliza se expide, ni ser contrarios a la misma. El hecho de que en el momento de ocurrir el accidente, el automóvil aquí envuelto transportara meramente invitados del chófer, no exime de responsabilidad a la aseguradora.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.

Opinión disidente del Juez Asociado Sr. Snyder.

Disiento. En primer lugar, aunque la Ley aquí envuelta proveyera un seguro compulsorio, creo que la póliza fué expedida de conformidad con la Ley. El estatuto no requiere una póliza general, independientemente de cómo o cuándo se use el vehículo. Por el contrario, la Ley provee solamente que la responsabilidad es exigida a "Todo vehículo de motor . . . dedicados a la transportación de pasajeros mediante paga . . . ". En su consecuencia, el limi-

tar la responsabilidad de la póliza aquí envuelta a aquellos casos en que el vehículo se usa para transportar pasajeros mediante paga está en armonía y no en conflicto con el estatuto.

La compañía de seguros no recibió la prima mayor exigida para pólizas generales. Tampoco fué su intención, a cambio de la comparativamente pequeña prima recibida, garantizar la integridad de los dueños de automóviles públicos expidiéndoles una póliza general que cubriera toda clase de accidentes, incluyendo aquéllos provenientes del uso de dichos automóviles por sus dueños en paseos privados más bien que de conformidad con las disposiciones de la Ley. Sin que de los términos del estatuto o de la póliza surja justificación alguna para ello, el tribunal ha impuesto a la compañía un vasto campo de responsabilidad que ella no asumió en el contrato y por el cual no se le ha pagado la correspondiente prima.

Nunca he sido partidario de seguir ciegamente el lenguaje literal de una ley, no importa cuáles sean las consecuencias. "El interpretar las leyes, no es sin duda un proceso mecánico y aun cuando los jueces lo realicen de la manera más escrupulosa posible, ello no está exento de alguna infusión retrospectiva de suerte que la línea entre la interpretación y la sustitución es a veces sutil. Pero existe diferencia entre leer lo que dice la ley y redactar ésta de nuevo. La Corte en este caso no se adhiere al contexto sino que lo suprime y le da nueva forma. Tales libertades literarias apenas están justificadas . . .". *Shapiro* v. *United States,* 335 U.S. 1, opinión disidente del Juez Frankfurter, pág. 8 del alcance de la opinión.

La opinión de la mayoría da la impresión de que sigue la doctrina establecida en los casos de seguro compulsorio. Pero no cita caso alguno con excepción del de *Rondón,* que es enteramente inaplicable. Los casos que son enteramente aplicables y que no se citan en la opinión, de

acuerdo con mi criterio, son virtualmente unánimes en apoyo de mi posición más bien que en la del tribunal. Anotación, 141 A.L.R. 628; *American Casualty Co. of Reading, Pa.,* v. *Morris,* 51 F.Supp. 889 (W. Va., 1943); *Travelers Ins. Co.* v. *Caldwell,* 133 F.2d 649 (C.C.A. 8, 1943); *Duke Anderson Drilling Co.* v. *Smith,* 141 P.2d 565 (Okla., 1943); *Hoar* v. *Gray,* 42 A.2d 822 (Pa., 1945); *Sordelett* v. *Mercer,* 40 S.E.2d 289 (Va., 1946); *Commercial Standard Ins. Co.* v. *Robertson,* 159 F.2d 405, 408–10 (C.C.A. 6, 1947), y casos allí citados. *Cf. Savery* v. *Kist,* 11 N.W.2d 23 (Iowa, 1943); *Miller* v. *State Automobile Ins. Ass'n,* 21 N.W.2d 621 (N.D., 1946).([1])

En segundo lugar, creo que todavía es de aplicación el caso de *Hernández,* no empece los cambios habidos en la ley. O el caso de *Hernández* o el presente está mal resuelto. Creo que el de *Hernández* fué decidido correctamente. A mi juicio, este caso en efecto revoca el de *Hernández.*

En tercer lugar, la regla de *stare decisis* no es inflexible. Véase *Pérez Segovia* v. *Tribunal de Distrito,* ante, pág. 4. Pero de tener dicha regla algún significado, éste debe aplicarse aquí. Aun cuando el caso de *Hernández* sea erróneo, no debemos revocarlo.

En cuarto lugar, si el caso de *Hernández* se revoca ahora, creo que por lo menos debe serlo prospectivamente. No debemos menoscabar los derechos adquiridos de la compañía de seguros que celebró este contrato descansando en la regla establecida en el caso de *Hernández.* Según dijimos en *Mayagüez Lt., P. & I. Co.* v. *Tribunal de Contribuciones,* 65 D.P.R. 30, 35, "aquéllos que han obtenido derechos de propiedad o de contratos, descansando en una decisión de

---

([1]) Según indican los casos en que baso mi contención, el transitar hacia y desde los puntos donde se toman pasajeros, y el efectuar otros viajes necesariamente incidentales al negocio, tales como llevar el automóvil a un garage para tomar gasolina o para realizar reparaciones, está cubierto por la póliza aquí envuelta. Pero en este caso el viaje en manera alguna estaba relacionado con el servicio de pasajeros mediante paga y por tanto no lo cubrían ni la ley ni la póliza.

una corte de última instancia, pueden bajo ciertas circunstancias ser protegidos en sus derechos, no obstante la revocación posterior de la decisión en cuestión. *A. Cuesta & Cía.* v. *Tesorero,* 54 D.P.R. 87; *F. Olazábal & Cía.* v. *Corte de Distrito,* 63 D.P.R. 928."

Creo que debió revocarse la sentencia de la corte de distrito y desestimarse la demanda en cuanto a la compañía de seguros.